## BARNES *v.* THE RAILROADS.

The one hundred and sixteenth section of the Internal Revenue Act of June 30th, 1864, amended by the act of March 2d, 1867, laid a tax of 5 per cent. on incomes derived from any source whatever. The one hundred and nineteenth section enacted "that the taxes on incomes herein imposed shall be levied on the 1st day of March, and be due and payable on or before the 30th day of April in each year until and including the year 1870, and no longer."

The one hundred and twenty-second section, as subsequently amended, imposed a tax of 5 per cent. on all interest payable and dividends declared by any railroad or canal company, &c., whenever payable; to be paid by the company and deducted from the amount payable to the bond or stockholder.

*Held* (by a court nearly equally divided, and the majority who agreed in the judgment not agreeing in the grounds of it), that interest or dividends which accrued prior to the 1st of January, 1870, were taxable under the act, though payable or declared on or after the date named.

ERROR to the Circuit Court for the Eastern District of Pennsylvania; the case being thus:

The one hundred and sixteenth section of the act of June 30th, 1864, as amended by the thirteenth section of the act of March 2d, 1867,* enacts:

"SECTION 116. That there shall be levied, collected, and paid annually upon the gains, profits, and income of every *person* residing in the United States, or of any *citizen* of the United States residing abroad, whether derived from *any kind of property*, rents, interest, dividends, or salaries, or from any profession, trade, employment, or vocation, carried on in the United States or elsewhere, *or from any other source whatever*, a tax of 5

---

\* 13 Stat. at Large, 281; 14 Id. 477.

per centum on the amount so derived over $1000, and a like tax shall be levied, collected, and paid annually upon the gains, profits, and income of every business, trade, or profession carried on in the United States by persons residing without the United States, and not citizens thereof. And the tax herein provided for shall be assessed, collected, and paid upon the gains, profits, and income for the year ending the 31st day of December next preceding the time for levying, collecting, and paying said tax."

The one hundred and seventeenth section of the same act, as amended in the same way, required that there should be included, *inter alia,* in the estimate of gains, profits, and income, which the act made it obligatory on the taxpayer to return, the share of any person of the gains and profits of all companies, whether incorporated or partnership, who would be entitled to the same if divided, whether divided or otherwise,

"Except the amount of income received from institutions or corporations whose officers, as required by law, withhold a per centum of the dividends made by such institutions, and pay the same to the officer authorized to receive the same, and except that portion of the salary or pay received for services in the civil, military, or naval, or other service of the United States, including senators, representatives, and delegates in Congress, from which the tax has been deducted."

The one hundred and eighteenth section related to the manner of the party's making and the assessor's obtaining returns of that portion of the taxpayer's income which was to be paid by such taxpayer directly.

The one hundred and nineteenth section, as amended by the already-mentioned section of the act of March 2d, 1867,* enacts:

"SECTION 119. That the taxes on incomes herein imposed shall be levied on the 1st day of March, and be due and payable on or *before the 30th day of April in each year, until and including the year* 1870, *and no longer.*"

* 13 Stat. at Large, 283; 14 Id. 480.

The one hundred and twenty-second section of the same act as amended by the ninth section of the act of July 13th, 1866,* enacts:

"Section 122. That any *railroad*, canal, turnpike, canal navigation, or slack-water *company*, indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip or money, due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, *shall be subject to and pay a tax of* 5 *per centum* on the amount of all such interest, or coupons, dividends, or profits, whenever and wherever the same shall be payable, and to whatever party or person the same may be payable, including non-residents, whether citizens or aliens.

"*And said companies are hereby authorized to deduct and withhold from all payments on account of any interest, or coupons, and dividends, due and payable as aforesaid, the tax of* 5 *per centum;* and the payment of the amount of said tax so deducted from the interest, or coupons, or dividends, and certified by the president or treasurer of said company, shall discharge said company from that amount of the dividend, or interest, or coupon, on the bonds or other evidences of their indebtedness so held by any person or party whatever, except where said companies may have contracted otherwise."

This is the material part of the section; another paragraph, however, being referred to in one of the opinions given further on in the case, as bearing on the question hereafter stated as in controversy, the paragraph, which runs thus, is added:

"And a list or return shall be made and rendered to the assessor or assistant assessor, on or before the 10th day of the month following that in which said interest, coupons, or dividends become due and payable, and as often as every six

---

* 13 Stat. at Large, 284; 14 Id. 138.

months; and said list or return shall contain a true and faithful account of the amount of tax, and there shall be annexed thereto a declaration of the president or treasurer of the company, under oath or affirmation, in form and manner as may be prescribed by the Commissioner of Internal Revenue, that the same contains a true and faithful account of said tax. And for any default in making or rendering such list or return, with the declaration annexed, or of the payment of the tax as aforesaid, the company making such default shall forfeit as a penalty the sum of $1000; and in case of any default in making or rendering said list or return, or of the payment of the tax or any part thereof, as aforesaid, the assessment and collection of the tax and penalty shall be made according to the provisions of the law in other cases of neglect or refusal."

The one hundred and twenty-third section of the same act, as amended by the thirteenth section of the act of March, 1867, enacted:

"SECTION 123. That there shall be levied, collected, and paid on all salaries of officers, or payments for services to persons in the civil, military, naval, or other employment or service of the United States, including senators, representatives, and delegates in Congress, when exceeding the rate of $1000 per annum, a tax of 5 per centum on the excess above the said $1000; and it shall be the duty of all paymasters and all disbursing officers under the government of the United States, or persons in the employ thereof, when making any payment to any officers or persons as aforesaid, whose compensation is determined by a fixed salary, or upon settling or adjusting the accounts of such officers or persons, to deduct and withhold the aforesaid tax of 5 per centum; and the pay-roll, receipts, or account of officers or persons paying such tax as aforesaid, shall be made to exhibit the fact of such payment."

In this state of statutory enactment, the Philadelphia and Reading Railroad Company (a corporation of Pennsylvania) on the 22d of *December*, 1869, declared a dividend, payable *January the* 17th, 1870, on their stock, as part of the profits made between the 1st of July and 1st of December, 1869; the dividend being made in pursuance of a power in the company's charter which authorized its managers to declare

at least twice in each year such dividend of the company's profits as they deemed advisable; the same to be payable at the expiration of ten days.

· So too the Harrisburg, Portsmouth, and Mount Joy and Lancaster Railroad Company, having a large capital stock, and having issued bonds for money, with interest payable semi-annually on the 1st of January and July, declared *on the 10th of January*, 1870, a dividend on their stock as part of their income and gain made between the 1st of July, 1869, and the 1st of January following. Apart from this dividend a semi-annual instalment on the bonds fell due on the 1st of January, 1870.

In both the cases, and in the cases of several other railroad companies* which had made dividends, or were about to pay interest, the assessor of the district assessed a tax of 5 per cent. on this dividend. The companies refused to pay, and the collector, one Barnes, distrained. Thereupon the companies sued Barnes in trespass.

The question in the cases was whether the duration of the tax upon "interest or coupons, dividends or profits" of railroad, canal, and other companies, imposed by the 122d section, quoted above, was subject to the limitation fixed by the 119th section, taken in connection with the 116th section. In other words, whether a tax upon the profits, interest, or dividends mentioned in the said 122d section was authorized to be assessed and collected, where such profits were set apart or where such interest or dividends became due and payable *after* the 31st of December, 1869, and especially as in the second of the above-mentioned cases, where the dividend was declared after that date. The government contended that the limitation referred to was not applicable to the tax described in the 122d section, and that the assessment and collection thereof, upon interest, dividends, &c.,

---

* The Lehigh Valley Railroad Company; The Lake Superior and Mississippi Railroad Company; The Philadelphia and Trenton Railroad Company. The last-named company's dividend was declared January 19th, 1870, and was payable on the 1st of February.

due and payable subsequent to that date, were authorized; a position denied by the railroad companies and their stockholders and creditors.

. The court below was of opinion that the tax was not authorized, and gave judgment accordingly. From that judgment the collector brought the cases here.

In this court the cases were twice argued. On the first argument, the court being then composed of eight judges, there was an equally divided bench. After the accession of Mr. Justice Hunt a new argument was ordered, and it was accordingly reargued by *Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, for the collector; and by Messrs. J. G. Gowen, Chapman Biddle, and Theodore Cuyler, for different railroad companies interested.*

Mr. Justice CLIFFORD, now, March 3d, 1873, delivered. the judgment of the court in all the cases, dividing them, as they had been argued, into two classes; the first class being where the dividend was declared prior to the 1st of January, 1870, and made payable afterwards; the second where it had been both declared and made payable afterwards.

### I. IN THE FIRST CLASS.

Power to lay and collect taxes for Federal purposes, being vested exclusively in Congress, it becomes necessary, whenever the validity of such a tax is drawn in question, to examine the act imposing the tax, as the question in every case must necessarily depend upon its true construction, unless it appears that the tax is not apportioned as required, or not uniform, or the object taxed is one not taxable for such a purpose.

Railroad companies indebted for any money for which bonds or other evidences of indebtedness have been issued, payable in one or more years after date, subject to interest or with coupons representing interest, are by the 122d section of the act of the 13th of July, 1866, made liable to the internal revenue tax imposed by that section.

Provisions upon the subject differing essentially from

those contained in that section had previously been enacted; but the Congress, on that day, amended the corresponding section in the prior law by striking out all after the enacting clause, and inserting in lieu thereof the section under consideration, which also provides that "any such company that may have declared any dividend in scrip or money, due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, and all profits of such company, carried to the account of any fund, or used for construction, shall be subject to, and pay a tax of 5 per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever the same shall be payable, and to whatsoever party or person the same may be payable, including non-residents, whether citizens or aliens."*

By the act incorporating the railroad company it was provided that the dividends of so much of the profits of the company as it should appear advisable to the managers should be declared at least twice in every year, payable to the stockholders subsequent to the expiration of ten days from the time it was so declared.

Apart from that it also appears that the railroad company, on the 22d of December, 1869, declared a dividend in money amounting in the whole to the sum of $1,527,531.59 on their capital stock, as part of their earnings, profits, incomes, and gains made, and which accrued between the 1st of July of that year and the 1st of December of the same year. None of these matters are controverted, but the dividend, though it accrued during the period described, and was declared at the date specified, was made payable to the stockholders on the 17th of January following, as appears by the record.

Due return of the said dividend, as required by law, was made by the railroad company to the assessor of the first collection district, and the proper revenue authorities assessed a tax of 5 per centum upon the said dividend, amounting to the sum of $76,376.58, which the railroad company was required to pay within the period prescribed by law.

---

* 14 Stat. at Large, 139.

Payment of the tax having been refused, after due notice given and demand made, the collector, and the other two defendants as his deputies, distrained the goods and chattels mentioned in the declaration to secure and enforce the payment of the tax, penalty, and interest, as directed in the warrant from the assessor.  Distraint was made in due form, but the corporation plaintiffs, denying the legality of the tax, brought an action of trespass against the collector and his deputies in the State court to test that question, and the record shows that the suit, on the petition of the defendants, was regularly removed into the Circuit Court of the United States for trial.  Both parties appeared in the Circuit Court, and the plaintiffs having filed their declaration the defendants pleaded the general issue, and also a special plea, in bar of the action, setting up substantially the same matters as those set forth in the preceding statement.  Issue was joined upon the first plea, but the plaintiffs demurred to the second, insisting that the matters pleaded do not constitute any defence to the action which is the principal question in the case.  Judgment was rendered for the plaintiffs in the Circuit Court, and the defendants sued out a writ of error and removed the cause into this court.

Questions of importance to the parties, it may be conceded, are presented in the record for the decision of the court, but it must be admitted that they are all mere questions as to the construction of the act imposing the tax, as it is not pretended that the object taxed is one not taxable for Federal purposes, nor that the regulations prescribed for the assessment and collection of the tax are subject to any constitutional objections.  Stripped of every difficulty of that kind, as the case confessedly is, the great central question which arises is, what did the lawmakers mean when they enacted that "any such company that may have declared any dividend in scrip or money, due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, shall be

subject to and pay a tax of 5 per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever the same shall be payable ?"

Congress, it is insisted by the United States, intended to tax that accrued fund in the hands of the railroad company, in whatever form it might be; whether it existed as accumulated interest or in coupons representing interest, or in a dividend declared, or in a special fund of any kind, and without respect to the time of payment or the person or persons to whom it was ultimately payable. Every element of that proposition is denied by the plaintiffs, and as a means of refuting it they have entered into an extended and critical review of all the principal features of the prior acts providing for the collection of internal revenue duties.

Where a section or clause of a statute is ambiguous, much aid, it is admitted, may be derived in ascertaining its meaning by comparing the section or clause in question with prior statutes *in pari materiâ*, but it cannot be admitted that such a resort is a proper one where the language employed by the legislature is plain and free of all uncertainty, as the true rule in such a case is to hold that the statute speaks its own construction.

Much criticism is bestowed upon the corresponding provisions in the prior acts in order to show that Congress never intended to tax the railroad company at all, and that the tax, in view of the circumstances, cannot be sustained against the shareholder as a tax on income for the half-year specified in the statement, as the dividend was not made payable to the stockholder until the 17th of January of the succeeding year; and the court, if the tax could be regarded as one imposed upon the shareholder, would be inclined to concur with the plaintiffs that a dividend, neither due nor payable to the shareholder within a given year, could not be taxed to the shareholder as income of that year under the internal revenue laws which were in operation at the time the tax in question was assessed and collected.

Concede all that and still the court is of the opinion that

the concession cannot benefit the plaintiffs, as the tax, by the very terms of the act imposing it, is a tax on the railroad company to be assessed and collected in the manner and by the means prescribed in the act imposing the tax, and having come to that conclusion it will not be necessary to examine very critically the machinery enacted in prior laws for the assessment and collection of income taxes against individuals, as the court is of the opinion that those regulations afford little or no aid in solving any material question involved in this record.

Attention was called during the argument to the fact that the railroad company is authorized, by the same section which imposes the tax, to deduct and withhold from all payments on account of any interest or coupons and dividends, due and payable as aforesaid, the tax of 5 per centum, and that the payment of the amount of the tax so deducted from the interest or coupons or dividends, and certified by the president or treasurer of the company, is made a discharge to the company for the amount of the tax so paid, deducted, and withheld, except where the company may have otherwise contracted.*

Attempt is made to invoke that provision as showing that the tax is a tax on the shareholder and not a tax on the railroad company, but the court is unable to perceive that the argument has any foundation whatever, as the provision does not contain a word inconsistent with the preceding part of the section, which in terms imposes the tax upon the railroad company.

Beyond doubt those two provisions should be construed together, and when so construed they are perfectly consistent and show to the entire satisfaction of the court that the plaintiffs are liable to pay the tax in controversy. They are so liable because it appears that they, as such company, having been indebted for money, issued bonds, or other evidences of indebtedness, payable with interest, or with coupons representing interest, in one or more years after date,

---

* 14 Stat. at Large, 139.

and that they declared a dividend in money due or payable to their stockholders as part of the earnings, profits, income, or gains of such company, and the section provides that such a company under such circumstances shall be subject to and pay a tax of 5 per centum on the amount of all such interest or coupons, dividends or profits, and authorizes the company to deduct and withhold the amount of the tax from the dividend due or payable to their stockholders.

Different regulations for the assessment and collection of the income taxes of every kind were prescribed in the prior laws imposing internal revenue duties, but they were not in all respects satisfactory, and many controversies had arisen calling in question the action of the revenue officers in their efforts to enforce the collection of that branch of the public revenue. Contrariety of decision had resulted in some instances, and the Circuit Court had decided in one case that a railroad company could not deduct and withhold the amount of such a tax from a dividend due and payable to a non-resident alien, the presiding justice being of opinion that the language of the prior act did not warrant the conclusion that Congress intended to include such holders of the bonds or certificates in the category of persons liable to such an assessment.*

Congress, accordingly, in order to remove those difficulties, imposed the tax upon the railroad company, and enacted that the company should pay the same whenever and wherever the dividend should be payable, and to whatsoever party or person the same should belong, showing beyond the possibility of doubt that Congress intended to hold the railroad company absolutely and solely liable for the tax, reserving to the company the right, which is equally unqualified, of deducting and withholding from the dividend the amount of the tax, whether the dividend was due or payable to the stockholder before or subsequent to the payment of the tax, and wholly irrespective of the question

---

* Railroad Co. *v*. Jackson, 7 Wallace, 269; Jackson *v*. Railway Co., 2 Internal Revenue Record, 174.

whether the stockholder was a resident or non-resident, or citizen or non-resident alien.

Payment of the tax by the company is an absolute requirement, just as much so as if the company was the actual holder of the bonds and the real owner of the dividends, whether they deduct and withhold the amount from the dividends or not, and the fact that the company is permitted to do so, if they see fit, does not in the slightest degree change the relation of the company to the United States, as the taxpayers under that section of the law imposing internal revenue duties.

Confirmation of that view is also derived from the regulations for the assessment and collection of the tax contained in the same section, which require that a return shall be made and rendered to the assessor or assistant assessor on or before the 10th day of the month following that in which said interest, coupons, or dividends become due and payable, and as often as every six months, and that the return shall contain a true and faithful account of the tax, with a declaration annexed thereto, of the president or treasurer of the company, verifying that statement under oath or affirmation.

All these regulations apply to the company, and the provision is that the company, if they make default, either in rendering the return or in the payment of the tax, shall forfeit as a penalty the sum of $1000, and that the tax and the penalty shall be assessed and collected as in other cases of neglect or refusal.

Special reference is made by the plaintiffs to the regulation enacted in the 119th section of the act of the 2d of March, 1867, that " taxes on income herein imposed " shall be levied on the 1st day of March in each year, and be due and payable on or before the 30th day of April in the same year, as inconsistent with the theory assumed by the United States, but the court is not able to perceive that the objection is entitled to any weight, as the income taxes therein imposed are required to be assessed on the incomes of individuals, and the 117th section of the same act expressly authorizes the individual to omit from his return of gains,

profits, and income the amount of income received from institutions or corporations whose officers, as required by law, withhold a per centum of the dividends made by such institutions and pay the same to the officer authorized to receive such payments. Important amendments were made by that act to some of the sections of the prior act, but the 122d section, under which the tax in controversy was assessed, was left in full force and operation, without any change, alteration, or modification of any kind.

Such a dividend as that made by a railroad company is not required to be included in the return made by the shareholder of his gains, profits, and income, but is expressly required by law to be returned by the president or treasurer of the railroad company, as before explained, and the act of Congress in terms provides that the company shall be liable to and pay the tax, no matter when or where or to whatsoever party or person the dividend may be payable.*

Prior to that time the rule had been different, as the 116th section of the act of the 3d of March, 1865, expressly required that the amount of income received from such institutions by a shareholder should be included in his return to the assessor, but the power to lay and collect taxes for Federal purposes is vested in Congress, and Congress having repealed that provision and substituted another in its place, requiring the return to be made by the president or treasurer of the company, and having finally authorized the shareholders to omit the amounts received from that source from their returns, the argument would seem to be concluded unless it be assumed that some one or all of these regulations transcend the power of Congress under the Constitution, which is not pretended.†

Argument to show that a railroad company may be taxed for Federal purposes is certainly unnecessary, as the theory is not controverted, and the proposition that the dividends of such a company are the proper objects of such taxation is also self-evident. Congress may tax such a dividend be-

---

* 14 Stat. at Large, 139 and 478.          † 13 Id. 479; 14 Id. 478.

fore it is paid to the holders of the securities, either as the property of the company or of the shareholders, at the election of Congress, nor can either party have any just ground of complaint if proper regulations are enacted to apportion and distribute the burden.

Power to tax either the company or the shareholder being admitted, the only question which can arise in this case is a question of construction, and the court is of the opinion that the act of Congress imposes the tax in controversy upon the railroad company. Having come to that conclusion it is not necessary to enter into any discussion of the question whether the action of trespass will lie in such a case against the collector of the revenue. He acts under a warrant or other process from the assessor, and it may well be doubted whether he can be regarded as a trespasser unless it appears that he exceeds his jurisdiction. Several cases decide that the party taxed must pay the tax and bring assumpsit to recover back the money.*

Neither party, however, raised any such questions in the court below, nor has it been discussed in this court, and in view of those facts the court is not inclined to decide it at the present time.

## II. IN THE SECOND CLASS OF CASES.

Internal revenue taxes were assessed against the corporation plaintiffs by the assessor of the first collection district charged with that duty, and the plaintiffs denying the legality of the assessment refused to pay the tax, and the collector having distrained the goods and chattels mentioned in the declaration, as the means of enforcing payment, the plaintiffs brought an action of trespass against him and his deputy, claiming damages for the alleged unlawful seizure and detention of the goods and chattels.

Enough appears in the record to show that the plaintiffs are a railroad company; that being indebted for money to

---

*. Philadelphia v Collector, 5 Wallace, 731; Assessor v. Osbornes, 9 Id. 574.

a large amount they issued bonds for the same, or other evidences of indebtedness, payable with interest, or with coupons representing interest, in one or more years subsequent to their date.   On the 10th of January, 1870, the railroad company declared a dividend in money amounting to the sum of $43,567.63 on their capital stock as part of their income and gains made, and which accrued between the 1st of July, 1869, and the 1st of January following.

Apart from the dividend an instalment of semi-annual interest also fell due at the same time, amounting to $21,000, which accrued during the same six months for which the dividend of the income and gains was declared.  Due return was made by the railroad company of the amount of the dividend and interest to the assessor of internal revenue for the first collection district, and a tax of 5 per cent. on the amount was assessed by the proper revenue authorities, which is the tax in controversy, and for which the distraint was made, as alleged in the pleadings.

Detailed statement of the pleadings is unnecessary, as they are the same as in the preceding case, and all the questions presented for decision are the same except one, which will be made the subject of special examination.   Judgment was rendered for the plaintiffs in the Circuit Court, and the defendants brought a writ of error and removed the cause into this court.

Such a dividend, declared by such a company, in money, due or payable to their stockholders as part of the earnings, profits, income, or gains of the company, it was decided in the preceding case rendered the company liable to the tax of 5 per cent. on the amount of such income or gains, as more fully explained in the opinion delivered in that case, and the court is of the opinion that the tax on the semi-annual instalment of interest is within the same principle, and that it must be governed by the same rule.

Suppose that is so, still it is insisted by the plaintiffs that the rule there adopted is not applicable in this case, as the dividend was not declared within the six months speci-

fied in the pleadings, and because neither the dividend nor
the interest was due or payable to the stockholders until the
10th of January following. Beyond doubt the two cases
differ in that respect, and the question in this case is whether
the admitted fact that the dividend was not declared within
the half-year during which the income and gains were made
takes the case out of the rule adopted in the other case.

Much weight would be due to that suggestion if the tax
was a tax upon the shareholder, but the court has already
decided that the tax imposed by that provision is a tax upon
the railroad company, and the court adheres to that conclu-
sion, which is confirmed by the fact that the object made
taxable by that section is not only "any dividend declared,"
but the language also extends to "all profits of such com-
pany carried to the account of any fund, or used for con-
struction," showing that Congress intended that such com-
pany shall be subject to and pay a tax of 5 per centum on
the amount of all such interest or coupons, dividends or
profits, whenever and wherever the same shall be payable
and to whatsoever party or person the same may ultimately
belong.

Tested by these considerations it is quite clear that it is
the fund which accrued within the half-year which Congress
intended to tax, and the record shows that every dollar of
the fund taxed in this case accrued within the last six months
of the year preceding the time when the dividend was actu-
ally declared.

Although the dividend was not declared until the 10th of
January, 1870, yet it is true that the object taxed is the fund
which accrued within the last six months of the preceding
year, and it is certain that the fund taxed does not include a
dollar of the income or gains of the company for the suc-
ceeding year. Concede that, and still it is insisted by the
plaintiffs that the dividend cannot be regarded as income
and gains of the company for the six months specified in the
pleadings, because it was not actually declared as such by
the company within that period, but the court is not able to
adopt that construction of the act, as it would enable the

company to postpone the payment of such a tax for six months or even for a year whenever they pleased, by omitting to declare a dividend, which would be inconsistent with the plain intent of Congress as manifested by the language employed in the section imposing the tax.

Taxes illegally exacted under the revenue laws of the United States may be recovered back, if paid under protest, in an action of assumpsit against the collector, but the person taxed cannot enjoin the collector from enforcing payment, and very grave doubts are entertained whether trespass against the collector is a proper remedy under existing laws. No such error, however, having been assigned in the case the court will not decide the point at the present time.*

JUDGMENT REVERSED IN EACH CLASS OF CASES, and the causes remanded for further proceedings in conformity to the opinion of the court.

BRADLEY, J.: I concur in the judgment of the court on the ground that the 119th section of the Internal Revenue Act, in affixing a limit to the period for imposing and collecting the income tax, referred in express terms only to the annual tax returnable and payable by individuals, and to no other tax imposed by the act.

Mr. Justice STRONG (with whom concurred the CHIEF JUSTICE and Justices DAVIS and FIELD), dissenting.

I am unable to concur in the construction which a majority of my brethren have given to the acts of Congress, relative to the income tax, and consequently I dissent from the judgments which have been directed in these cases. The reasons for this dissent I propose now to give, as briefly as I can.

Whatever may be said of the earlier acts of Congress, that of June 30th, 1864,† as amended by the acts of 1866 and 1867, provided a complete system of taxation upon incomes. The 116th section, which is the first that had reference to the subject,‡ enacted that there should be levied,

---

* 14 Stat. at Large, 475, ? 10.        † 13 Id. 284.        ‡ 14 Id. 477.

collected, and paid annually upon the gains, profits, and income of every person residing in the United States, or of any citizen of the United States residing abroad, whether derived from any kind of property, rents, *interest*, dividends, or salaries, or from any profession, trade, employment, or vocation carried on in the United States or elsewhere, *or from any source whatever,* a tax of five per centum on the amount so derived over $1000; and that a like tax should be levied, collected, and paid annually upon the gains, profits, and income of every business, trade, or profession carried on in the United States by persons residing without the United States and not citizens thereof. The same section declared that the tax therein provided for should be assessed, collected, and paid upon the gains, profits, or income for the year ending the 31st day of December next preceding the time for levying, collecting, and paying said duty. What that time was directed to be, as well as the duration of the tax, was defined by the 119th section, which enacted as follows : " That the taxes on incomes herein imposed shall be levied on the 1st day of March, and be due and payable on or before the 30th day of April in each year."

No language could be more comprehensive. It embraces income of every description, whether derived from labor or property, and it particularly mentions income derived from *interest* and *dividends,* adding the words, " or from any source whatever." It is not to be doubted that it includes income derived from dividends on stock held in railroad companies, and income received as interest on bonds of such companies. This section, I think, is the only one that imposes any income tax. All the other sections, from the 117th to the 123d inclusive, are classified under the title " income," and they relate to it, but they are provisions for the ascertainment of the amount, and for the collection of the tax. None of them impose any new or different tax upon the taxpayer. They all have reference to that income made taxable by the 116th section. That, it was known, might be derived from various sources, and provision was made for ascertaining its amount, as well as for collecting the tax upon every item

composing it. The 117th section, as amended by the act of 1867, required that there should be included in the estimate, *inter alia*, the share of any person of the gains and profits of all companies, whether incorporated or partnership, who would be entitled to the same if divided, whether divided or otherwise, " except the amount of income received from institutions or corporations whose officers, as required by law, withhold a per centum of the dividends made by such institutions, and pay the same to the officer authorized to receive the same, and except that portion of the salary or pay received for services in the civil, military, or naval, or other service of the United States, including senators, representatives, and delegates in Congress, from which the tax has been deducted." But these exceptions recognize the dividends and interest received from such companies, and the gains from the salaries or pay of United States officers, as a part of the taxpayer's income. It is his share of the gains and profits of the companies, or corporations, and not the gains of the companies themselves which the exceptions direct shall not be included. The reason of this is too obvious to escape notice, unless it be forgotten that the 117th section is but part of a system for levying and collecting an income tax. If it be construed, as it must be, in connection with the other sections relating to the same subject, it is plain that its purpose was to ascertain only that part of a person's income, the tax upon which the next following section (the 118th) required should be paid by the taxpayer himself to the collector, leaving that part of his income, which consisted of his share of the gains and profits of institutions or corporations whose officers, as required by law, withheld a per centum of its dividends and paid the same to the officer authorized to receive it, to be ascertained and the tax thereon to be collected by the companies themselves. A special mode of collecting the tax on such dividends, interest, and government salaries was intended to be provided, and was actually provided.

Passing by the 118th and 119th sections, which relate to the manner of making returns of that part of a taxpayer's

income the tax upon which he is required to pay directly to the collector, I come to the 120th, 121st, 122d, and 123d sections.  They all relate to that portion of the taxpayer's income excepted by the 117th section from the return which he is required to make to the assessor by the 118th section. They provide for the collection of the tax upon that portion. The 120th imposes a duty of 5 per centum on all dividends in scrip and money thereafter declared due, wherever and whenever the same shall be payable to stockholders, policyholders, or depositors, as part of the earnings, income or gains of any bank, trust company, or savings institution, and of any fire, marine, life, or inland insurance company, either stock or mutual.  This tax the banks and other institutions described were required to pay, and they were authorized to withhold from all payments made on account of any dividends or sums of money that may be due and payable as aforesaid the said duty of 5 per centum.  It is unnecessary to notice particularly the 121st section.

The 122d section enacted " that any railroad, canal, turnpike, canal navigation, or slack-water company, indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip or money due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, . . . shall be subject to and pay a tax of 5 per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever the same shall be payable, and to whatsoever party or person the same may be payable, including non-residents, whether citizens or aliens; and said companies are hereby authorized to deduct and withhold from all payments on account of any interest or coupons, and dividends, due and payable as aforesaid, the tax of 5 per centum; and the payment of the amount of said tax so deducted from the interest, or coupons, or dividends, and certified by the president or treasurer of said company,

shall discharge said company from that amount of the dividend, or interest, or coupons on the bonds or other evidences of their indebtedness so held by any person or party whatever, except where said companies may have contracted otherwise."

The 123d section enacted that there should be levied, collected, and paid on the excess above $1000 of all salaries of officers of the United States a tax of 5 per centum, and it required paymasters and disbursing officers to deduct and withhold said tax when making payment to such officers.

All these sections, I think, relate to the tax upon income, whether derived from interest, dividends, or from any source whatever, imposed by the 116th section, and their sole purpose was, not to impose a new tax, but to provide a different mode of collection from the taxpayer. The dividends, interest, and salaries mentioned in them were not required by the 117th and 118th sections to be included in the general estimate, or in the return made to the assistant assessor, because their amount was as certainly ascertainable by the corporations or officers required to collect the tax as it could have been by any return of the taxpayer, and it was more easily and certainly collectible.

I need not say more upon this branch of the case. If there could be a doubt in any mind that the tax for the collection and payment of which provision was made in the 122d section was a part of that imposed upon income by the 116th, it must be set at rest by the decision in *Jackson* v. *The Northern Central Railway*, a case tried in the Circuit Court of the United States for the District of Maryland, and subsequently removed here. The primary question in that case was whether the tax on interest payable by railroad companies (namely, the tax spoken of in the 122d section) was chargeable against non-resident aliens, and it was ruled by the Chief Justice that it was not. The ruling was based upon the position that the tax on such interest was the same as that imposed by the 116th section of the act of 1864, viz., a part of the income tax, and that as the 116th section did not include non-resident aliens, the tax on interest spoken

of in the 122d was not chargeable against them—the deduction of 5 per cent. being only a mode of collecting the income tax.   This decision was subsequently affirmed in the Supreme Court,* and the language of the court was as follows: "The decision was placed mainly upon the ground that, looking at the several provisions bearing upon the question, and giving to them a reasonable construction, it was believed not to be the intent of Congress to impose an income tax on non-resident aliens; that they were not only not included in the description of persons upon whom the tax was imposed, but were impliedly excluded by confining it to residents of the United States and citizens residing abroad [an exclusion only found in the 116th section], and that the deduction from the prescribed income of the interest on these railroad bonds, when paid by the companies, was regarded as simply a mode of collecting this part of the income tax.   We concur in this view." I understand this case as determining several things: *First,* that the 116th and 122d sections of the act of 1864 are parts of one system, devised for income taxation; *second,* that the tax on railroad dividends, and on interest of railroad indebtedness, is not a different tax from that imposed upon income generally; and, *third,* that the 122d section was intended merely to provide a special mode of collection for a part of the tax.

This decision was made, it is true, before the act of 1864, as amended by the act of 1866, had been again amended by the act of 1867, but the later amendment made no other change in the law than extending its provisions so as to embrace dividends and interest payable to non-resident aliens.

Regarding it, then, as an incontrovertible proposition that the tax mentioned in the 122d section is not a different tax from that imposed by the 116th, that it is a part of the tax levied upon income generally, no matter from what source derived, and that the purpose of the section was to provide a special mode of collection of the tax upon income consist-

---

* 7 Wallace, 262.

ing of railroad interest and dividends, I cannot comprehend why it did not expire with the expiration of the tax upon other income. When that expired was determined by the 119th section, which was in the following words: " The taxes on incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the thirtieth day of June of each year until and including the year 1870, and no longer." Whatever else this clause may mean, it manifestly embraces in terms taxes on income from any source—all income upon which the act imposed a tax. It excepts none. It does not speak of taxes on income, a return of which is required to be made by the taxpayer to the assessor, but its language is " *taxes on incomes herein imposed.*" As the 119th section imposed no tax, the reference must be to the income tax imposed by all parts of the act—to all of them, as well those upon railroad dividends, &c., as well as those imposed upon dividends of telegraph, manufacturing, or other companies, or upon income from any source.

The clause is also a clear enactment that the income to which it refers should not be subject to a tax unless derived or received prior to January 1st, 1870. No one who carefully reads the whole act can doubt that the 119th section must be construed in connection with the 116th, and that it speaks of the income made taxable by that section. That enacted, as has already been noticed, that the tax thereby imposed, including the tax on income derived from dividends and interest, should " be assessed, collected, and paid upon gains, profits, and income for the year ending the 31st day of December next preceding the time for levying, collecting, and paying said tax." Incontestably, therefore, though the last annual tax was required to be levied on the 1st of March, 1870, it was required to be a tax on the income of the year 1869. Hence it is plain the provision that the taxes on income should be levied on the 1st of March in each year until and including the year 1870, and no longer, must mean that the income of 1870 should not be subject to taxation.

I think, therefore, these two propositions are beyond any

reasonable doubt, or I should so think were it not that a majority of my brethren are of a different opinion.

1. The tax upon dividends made, and interest payable, by railroad, canal, turnpike, canal navigation, and slack-water companies, for the payment and collection of which provision was made by the 122d section, was a tax on income within the meaning of the 116th section, and not a different and independent tax.

2. That the tax upon all income, without regard to its source, "derived" or "received" by the taxpayer prior to January 1st, 1870, expired with the close of the next preceding year.

These conclusions are demanded, I think, alike by the letter of the act of Congress and by its spirit. To my mind they seem to be the only reasonable construction that can be given to it. I see nothing to warrant the belief that Congress intended to impose a burden upon income from one species of property greater or longer continued than that imposed upon income from other property, or that they intended to discriminate against Federal officers and compel them to pay a tax on their salaries, after taxes upon all other salaries had ceased. The dividends received by a shareholder of a railroad company, or a canal, turnpike, or slack-water navigation company, or of a banking, trust, or insurance company, are, in every sense, as much his income as are the dividends he may receive from any other company; for example, a bridge, or a manufacturing corporation. So is the interest received for loans to a railroad company as truly income of the bondholder as is the interest received by him from permanent loans to any other corporation, or to natural persons. Was it the intention of Congress to enact that one who lent his money to a telegraph company, or to a mining or manufacturing company, should be exempt from a tax upon his interest received after December 31st, 1869; but that one who lent to a canal or railroad company should continue to pay the tax indefinitely and for all time? Is such a reasonable construction of the act of 1864 and its amendments? I cannot believe it. I cannot attribute to

Congress any such injustice. The act shows no intent to make any such discriminations. Yet such discriminations are made if the tax mentioned in the 122d section, as well as that mentioned in the 123d, did not expire when the tax on other income expired.

I come now to the question—important to be considered in view of the pleadings in these cases—whether the tax mentioned in the 122d section was a tax upon the railroad companies, or a tax upon the stockholders and bondholders of those companies. In regard to this there ought to be no doubt. If it was a tax upon the railroad company, then the income of the stockholders and bondholders, derived from their dividends and interest, was exempt from all income tax, although the 116th section taxed income derived from any source, including interest and dividends. Such income was not to be returned to the assessor, and if not taxed in the mode designated in the 122d section, it was not taxed at all. To such an absurdity the construction that the section lays a tax upon the railroad company for its income inevitably leads.

But look now at the language of the section. It required any railroad company indebted for any money for which bonds or other evidence of indebtedness have been issued, bearing interest, payable one or more years after date, or any such company that should declare any dividend *as part* of the earnings, profits, or gains of such company, should be subject to, and pay a tax of 5 per centum on all such interest, dividends, or profits whenever and wherever the same should be payable, and to whatsoever party or person the same should be payable, *and authorized the companies to deduct and withhold from all payments on account of any interest or dividends*, due and payable as aforesaid, the tax of 5 per centum. It further enacted that the payment of the amount so deducted from the interest or dividends should discharge the company from that amount of the dividend, or interest, due to the stockholder or bondholder. It is too clear for argument that this was a collection of the tax from the stockholder, or creditor, and not from the company, and we have,

in effect, so decided in the *Case of the State Freight Tax.*\* Not. a dollar was to be taken from the treasury of the company. The tax was to come wholly from the share, or the bond-holder. The company was constituted the mere tax col-. lector, and was made liable only in default of its duty as such. If authorities are needed in support of so plain a proposition, they may be found in *Jackson* v. *Railroad Company*, cited above, and in *Haight* v. *Railroad Company*,† both construing this act. Indeed, in some of the States this mode of collecting a tax from shareholders and bondholders of corporations has of late been frequently adopted, and, so far as I know, it has never before been thought that the tax in such cases was a tax upon the companies, instead of a tax upon their shareholders or creditors. As well might it be claimed that when a tax collector is charged with the amount of the duplicate of taxes he is empowered by his warrant to collect, the taxes are laid upon him, and not upon those from whom he is required to collect them.

But the opinion of the majority of my brethren, that by the 122d section Congress intended to tax the railroad com-panies for *their* gains, profits, and income, and not to tax their bondholders and shareholders, leads to a very remark-able result. The interest due from the companies to their creditors—interest which accrued in 1869—is treated as in-come of the *companies* for that year, and they are taxed for it. Such is the effect of the judgments entered. The com-panies are compelled to pay an income tax, not upon what they received, but upon what they were obliged to pay to their creditors. A construction of the act of Congress that leads to such a result cannot be right. It seems to me the fact that the tax was exacted out of interest payable by the companies, as well as from dividends declared and payable by them, demonstrates that Congress had in view, in the 122d section, not the income of the companies, nor a tax upon them for it, but the income of share and bondholders, and a tax upon them. Railroad companies were taxed upon

---

\* 15 Wallace, 232.                    † 6 Id. 15.

their gains in another section, the 103d. They were not intended to be taxed in this.

Holding it, then, to be v ´ry clear that this section imposed no new tax, and that its design was merely to provide a mode of collection of a part of the income tax imposed by the 116th section upon the holders of the bonds and stock of railroad companies, the question is not, in my judgment, what the majority of the court considers it to be, whether the income upon which the tax in controversy in these cases was attempted to be levied was the income of the railroad companies for 1869, but whether it was the income of the stockholders and bondholders for that year. In two of the cases the dividends were declared in December, 1869, but were made payable in January, 1870. They were not, therefore, receivable until 1870. In all the other cases the dividends were declared, and the interest fell due in the year last mentioned. True, the dividends were out of profits made by the companies in 1869, and the interest on the debt due by them accrued in that year. But were the dividends and the interest income of the stockholders and bondholders then? Plainly, that which was the income of the companies in one year may not have been the income of their shareholders or creditors until the next. If it was not their income until 1870, it was not taxable against them, and the tax claimed in these cases is, as I have shown, a tax upon them. That nothing was income of the taxpayers until it was receivable by them is most apparent. The act itself sufficiently shows this. It was income " derived," or received, either actually, or potentially, that alone was made taxable. The tax was levied " *whenever* " and wherever the dividends or interest should become payable. The companies were required to render returns to the assessors, or assistant assessors, on the tenth day of the month following that in which the interest, coupons, or dividends became " *due and payable.*"\* The tax was an excise. It was taking out of the income a part of it, and it must, therefore, have

---

\* Vide, § 122.

been a tax upon something received, or receivable—something out of which the tax could be paid when exacted. And such was the uniform construction given to the act of Congress by the government, until after the tax had expired. Prior to the act of 1864 there was a tax on dividends of three per cent., and when by that act the rate was raised to five per cent. the Commissioner of Internal Revenue issued a circular, dated July 1st, 1864, declaring that " all dividends payable on and after July 1st, 1864, no matter when declared, are subject to the duty of 5 per centum." I have no doubt, therefore, that the dividends declared, and the interest accrued, must be regarded as income of the stockholders, or bondholders, for the year in which they became payable. It is quite immaterial, then, that the profits of the companies were made, or that the interest on their debt accrued, in 1869. They were not the taxpayers, and the tax was not levied upon their income. It was levied only upon that part of their gains, or the interest due from them, which had become payable to, and, therefore, income of their shareholders and bondholders. Those persons have paid taxes upon the full income of six entire years under the act of 1864. The judgments in these cases compel them to pay a tax upon their income for six years and a half, when all other persons whose income was derived from interest or dividends in other companies were relieved at the expiration of six years. In my judgment, the act of Congress warrants no such injustice.

I think the judgments in all the cases should be affirmed.