## HOLMES v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1921.)

No. 1876.

Criminal law ⊙—394, 753 (2)—Evidence illegally obtained is inadmissible, and, absent other evidence, directed verdict for defendant is proper.

Where the only evidence to sustain a charge of illicit distilling was the testimony of prohibition agents that they went to defendant's residence in his absence without a search warrant, and there found certain articles which they believed parts of a still and destroyed, consisting of empty kerosene cans, a keg, a piece of galvanized iron pipe, and a tub, *held* that such evidence was illegally obtained, and should have been stricken out on motion, and that in the absence of such motion a motion by defendant for a directed verdict should have been granted.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Criminal prosecution by the United States against Jake Holmes. Judgment of conviction, and defendant brings error. Reversed.

G. T. Graham, of Lexington, S. C. (George Bell Timmerman, of Lexington, S. C., on the brief), for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, herein called defendant, was convicted of illicit distilling. The government's witnesses were three prohibition agents. It is conceded that they went upon defendant's premises in his absence, without his knowledge or consent, and without a search warrant or other process. They testified to finding in the yard behind his house certain articles which they claimed were parts of a still, namely: A five-gallon kerosene can, which had the smell of still beer and appeared to have been on the fire; a 10 or 12 gallon keg containing some corn beer, which would have been "ready" in a few days; a piece of galvanized iron pipe, which they said had been coiled to use for a worm; and a wooden tub, called by them a "flake stand," in which defendant's wife was washing clothes at the time. One of the men went into the house and brought out another can, similar to the one found in the yard. No whisky was discovered on the premises. They broke up the keg and tub, but carried away the

---

⊙—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cans and piece of pipe and threw them into the Congaree river. Learning that defendant was at a ginnery in the neighborhood, they went there and arrested him, without a warrant. On the way to the jail he admitted, as they swore, that he had used the articles found by them for distilling whisky and had made a "run" only two or three days before.

No objection was made in the course of the trial to any of this testimony. The government of course produced none of the articles mentioned, for they had all been destroyed, but they were repeatedly referred to on cross-examination and by defendant's witnesses. The latter testified to the effect, among other things, that the articles in question, or at least some of them, had not been and could not have been used as parts of a still, and defendant stoutly denied that he had ever made any whisky or ever admitted having done so. There was no motion for a directed verdict at the close of the testimony, but after the general charge to the jury defendant submitted a number of requests for specific instructions, the last of which was that the jury be directed to acquit, "for the reason that the undisputed evidence in the case shows that all that is brought against the defendant was information obtained by the government's witnesses going upon and making search of the premises of the defendant, and making seizures thereon of the effects of the defendant, without due process of law and in violation of the Fourth Amendment of the federal Constitution." The refusal of this request raises the only question which needs be considered.

The recent cases of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. ——, and Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. ——, decided by the Supreme Court February 28, 1921, and in which the subject of illegal seizure is discussed at length, leave no room for doubt that the evidence upon which defendant was convicted was obtained in plain violation of his constitutional rights, and therefore should have been excluded. In each of those cases the conviction was sought to be sustained in part on the ground that application for return of the property seized was not made in time, but the contention was overruled. On that point the court says in the Gouled Case:

"It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

In the instant case the articles seized had been destroyed, as defendant knew, and to ask for their return, either before or at the trial, would have been an obvious futility. Nor was there any basis for objecting

to testimony in regard to them, on the ground of illegal seizure, until the fact was developed, on cross-examination of the government's principal witness, that the agents had raided the premises without a search warrant or other process. When that fact appeared and was admitted, the proper course undoubtedly would have been to move to strike out the evidence, because illegally obtained, and to object to further evidence for the same reason, instead of allowing the testimony to come in, and putting up a defense on the merits, and then raising the question by motion for a directed verdict. But this delay in making objection, or failure to object at the most fitting time, is the only feature, so far as we perceive, which distinguished the case at bar from the cases cited, and in the circumstances here disclosed it seems to us a distinction without substantial difference.

The judgment will be reversed and a new trial awarded.

Reversed.