### LEDBETTER v. BAILEY, Collector of Internal Revenue.

(District Court, W. D. North Carolina, at Greensboro. July 30, 1921.)

1. **Internal revenue ⬥28—Assessment and enforcement of taxes held illegal.**

   The action of the Internal Revenue Department in making assessments of taxes for illegal manufacture of liquor, filing liens and issuing warrants of distraint against citizens who had no notice or knowledge of the proceedings, and in many cases had not been charged with any offense, based on reports of prohibition agents, *held* without authority of law.

2. **Internal revenue ⬥28—To preclude injunction against collection of tax, the manner of assessment and collection must be legal.**

   In order to make applicable Rev. St. § 3224 (Comp. St. § 5947), providing that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," the tax which is to be collected must be founded upon some proper subject of taxation, must be assessed in a proper way, and collected in a legal manner.

3. **Internal revenue ⬥2, 45—Taxes cannot be assessed and collected under National Prohibition Act.**

   Under the provisions of Volstead Act, tit. 2, § 35, internal revenue taxes cannot be assessed or collected. The double tax provided for in said section and the penalties prescribed are nothing more nor less than punishment for the commission of criminal offenses, and these penalties must be collected by civil actions or pronounced as judgments in criminal cases.

4. **Internal revenue ⬥45—Assessment and collection of penalties by Internal Revenue Department may be enjoined.**

   The penalties provided for the illegal manufacture or sale of liquor by Volstead Act, tit. 2, § 35, cannot be assessed, and collection made by distraint by the Internal Revenue Department, and a suit to restrain such collection is not prohibited by Rev. St. § 3224 (Comp. St. § 5947).

In Equity. Suit by J. M. Ledbetter against J. W. Bailey, Collector of Internal Revenue, with 28 other cases. Decrees for complainant.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The bill filed by the complainant Ledbetter was in substance as follows:

That the complainant is a citizen of Wilkes county, in the Western district of North Carolina, and that the defendant is collector of internal revenue for the district of North Carolina; that in January, 1921, notice was sent to the complainant that an assessment of taxes and penalties had been made against him, aggregating $3,083.34, on the ground that the complainant had operated or permitted to be operated on his premises an illicit distillery for the manufacture of spirituous liquors. This notice was the first information to complainant that such claim for taxes against him was in existence. Payment of the said taxes was demanded. Soon thereafter complainant filed an application for the abatement of the said assessment on the form prescribed by law, in answer to which the complainant received the following communication, signed by the collector, bearing date of February 24, 1921.

"An examination of the records of this office shows that there is an outstanding assessment for taxes and penalty against you in the sum of $3,083.34, against which you have filed a claim for the abatement on form 47. You are herewith advised that a bond, for the penal sum of at least the amount of the assessment due, must be submitted by you as principal, with a recognized surety company as surety, in favor of the collector of internal revenue, Raleigh, N. C., in support of the above-mentioned claim for abatement. A blank form of bond which is acceptable to the collector of internal revenue is herewith enclosed.

"You are further advised that, unless the bond is duly furnished as suggested, the assessment must be paid and a claim for refund filed with the collector of internal revenue on form 46. In the event neither of the above-mentioned procedures is followed, the property of the assessed party will be seized under warrant of distraint by the United States of America. A further stay of the collection of the tax and penalty assessed against you cannot be granted for the consideration of the existing claim for abatement which you have already filed, unless the bond is furnished as suggested."

Complainant denies that he had ever engaged in the manufacture of distilled spirits, or permitted the manufacture of distilled spirits on his premises; further that no charge to that effect has ever been filed against him in any court of the United States or of the state of North Carolina. Complainant alleges that he made no effort to give the bond required, and that he was unable to make the cash payment of the taxes; that both of said requirements were unauthorized by law and were oppressive; that the collector was about to proceed against his property and sell the same under warrant of distraint; whereupon complainant, further alleging that he had no adequate remedy at law, brought this his bill, in which he seeks to have the collector enjoined from further proceeding.

The bills of complaint in the other cases under consideration, in their principal features, are in substance similar to the foregoing. There, are, of course, parties of different names, and the amount of assessment, the time of notice, etc., are also different. Additional facts, such as have been disclosed in the course of these proceedings, will be referred to in discussing the questions involved.

There are 28 cases in addition to the one stated, in all of which bills in equity are filed by the several complainants against J. W. Bailey, collector of internal revenue for the district of North Carolina (in some instances the name of the deputy having a warrant of distraint in hand is added as codefendant), seeking to enjoin the collector from proceeding with warrants of distraint, and making sales of property of plaintiffs to satisfy arbitrary assessments for taxes and penalties, made by the Commissioner of Internal Revenue, and placed in the hands of the collector for collection.

The cases were heard upon motion of government's counsel for dismissal of the several complaints, on the ground that in law the same had no standing in court, because upon the face of the complaints it appears that the suits were brought to enjoin the collection of taxes. No answers have been filed in any of the cases, so the court feels justified in taking to be true the averments of the several complaints; at any rate, in the absence of answers, they are taken to be admitted.

James W. McNeill, of Washington, D. C., John R. Jones, of North Wilkesboro, N. C., and W. P. Bynum, of Greensboro, N. C., for plaintiff.

B. W. Andrews, of Washington, D. C., Asst. Counsel, Internal Revenue Bureau, and S. J. Durham, U. S. Atty., of Gastonia, N. C., for defendant.

BOYD, District Judge (after stating the facts as above). In considering the principal questions involved in these several cases, it must be borne in mind, that, in order to be subject to the provisions of the Volstead Act (41 Stat. 305), untaxpaid liquors must be manufactured and sold for beverage purposes and no other. In the main the federal courts are taking the view that the laws, so far as distilled spirits for use as a beverage are concerned, are defunct, having been superseded by the Eighteenth Amendment to the Constitution and the legislation enacted by Congress in aid of its enforcement. Yet, notwithstanding this, the authorities are attempting to call to their aid in the assessment and collection of taxes, assessed as it is claimed under the Volstead Act, statutes which were enacted as a part of a system intended to secure to the government taxes, by levying assessments upon distilled spirits at a time, when it was not only lawful to manufacture and sell them for beverage purposes, but at a time when the government encouraged the manufacture and sale of such spirits, in order to have revenue derived therefrom for public uses.

In the effort to utilize these extinct laws, the method has been adopted of filing notices of liens with the clerk of the United States District Court in the district where the lands of the alleged taxpayer, who has been assessed, are situated. These notices are similar in form, and for a better understanding of their contents the following are selected from the great number filed in this district:

### "Notice of Tax Lien under Internal Revenue Laws.

"Pursuant to the provisions of section 3186 of the Revised Statutes of the United States, as amended (37 Stat. 1016), notice is hereby given that there have been assessed under the internal revenue laws of the United States, against the following named taxpayer, taxes (including penalties) which after demand for payment thereof remain unpaid, and that by virtue of the above-mentioned statute the amount of said taxes, together with interest, penalties, and costs that may accrue in addition thereto, is a lien in favor of the United States upon all property and rights to property belonging to said taxpayer, to wit:

"Name of taxpayer, J. Dan Long and Lon. D. Pusser. Residence or place of business, Unionville, N. C. Nature of tax, illicit distilling. Taxable period, twelve months, 1920. Amount of tax assessed, $3,551.20. Additional (penalty) tax assessed, $177.56. Date of assessment, October, 1920.

"J. W. Bailey, Collector.

"Name of taxpayer, J. Westley Hollifield. Residence or place of business, two miles north of Marion, N. C. Nature of tax, illicit distilling. Taxable period, four months, 1921. Amount of tax assessed, $666.67. Additional (penalty) tax assessed, $1,166.67. Date of assessment, May, 1921.

"J. W. Bailey, Collector.

"Name of taxpayer, Silas Reavis and Elsie Foster. Residence or place of business, Yadkinville, N. C. Nature of tax, illicit distilling, double tax on two gallons spirits. Taxable period, two months, 1921. Amount of tax

assessed, $357.93.    Additional (penalty) tax assessed, $1,087.33.    Date of assessment, July, 1921.

"J. W. Bailey, Collector.

"Name of taxpayer, Will Umstead.    Residence or place of business, eight miles northeast of Hillsboro, N. C.    Nature of tax, illicit distilling.    Taxable period, three months, 1921.    Amount of tax assessed, $500.00    Additional (penalty) tax assessed, $1,125.00.    Date of assessment, May, 1921.

"J. W. Bailey, Collector.

"Name of taxpayer, Jim White, Tom Scarlett, and Oscar Grubb.    Residence or place of business, ten miles east of Lexington, N. C.    Nature of tax, illicit distilling and double tax on eighteen gallons spirits.    Taxable period, five months, 1921.    Amount of tax assessed, $1,063.73.    Additional (penalty) tax assessed, $1,208.33.    Date of assessment, May, 1921.

"J. W. Bailey, Collector."

These assessments were all made in Washington and forwarded to the collector at Raleigh, who issued his warrants of distraint and caused notices like the above to be filed in each case.    This action was taken by the collector in response to instructions from headquarters in all of the pending cases, which number about 28, as before stated, and in which suits are brought for injunction.

[1] As the court is informed, these assessments were all made by the Prohibition Commissioner in Washington, delivered by him to the Commissioner of Internal Revenue, who approved the same and transmitted them to the collector.    It would make no difference, however, whether this course was pursued, or the assessments were made in the first instance by the Commissioner of Internal Revenue.    Reports sent in by the subordinate officers, engaged in enforcing the anti-liquor laws, constitute the bases upon which these assessments are made.    The reports, therefore, must necessarily be founded largely upon hearsay, and opinions formed by the subordinate officers, from circumstances existing or supposed to exist.    These officers could not, in the very nature of things, have any personal knowledge in the great majority of cases as to the ownership of an illicit distillery, its capacity, the length of time or in what particular months operated, or the quantity of spirits, if any, actually produced.    In some of the pending cases the alleged operators have been indicted.    A few have been convicted; others discharged by verdicts of not guilty, or the entry of nolle prosequis; and in others no criminal proceedings have been taken at all.

In none of the cases have the alleged taxpayers been notified in advance of the assessment, or that taxes were claimed against them.    The first notice of the assessment to the persons assessed is when the deputy collector goes with his warrant of distraint to make a demand for taxes, and to further advise that, unless the taxes are paid, the property of the alleged taxpayer will be promptly subjected to sale.    It will thus be seen that the persons against whom these claims are made have not had an opportunity to be heard; the whole proceeding being on the part of the government and altogether ex parte.

It is true that the taxpayer can file with the Commissioner of Internal Revenue a claim for abatement; but the deputy collectors have absolutely refused, when a claim for abatement is filed, to delay action under the warrant of distraint, unless the taxpayer gives a solvent bond, to be approved by such deputy or the collector himself, conditioned to

pay the tax, in case the claim for abatement is denied. The taxpayer was further advised that he could pay the tax and penalties in cash under protest, and file his application with the collector for a refund. Either of these methods of relief was absolutely beyond the reach of the alleged taxpayer in the great majority of these cases, for the bonds required could not be furnished and the amounts assessed and demanded were far beyond ability to pay, and by these methods the victims of these secret and arbitrary assessments are to be bereft of their property without being accorded a day in court to make defense.

Referring again to the reports upon which these assessments are based, it is an irresistible conclusion, from the character of the notices, the contents of the liens filed, and the manner of assessment, that the information furnished to the taxing authorities in Washington is largely the result of unfounded opinion and alleged facts, existing only in the minds of those who have sent in the statements. It is evident that the imaginations of these reporters in many instances have been allowed to take unrestrained flight, and have thereby reached heights inconceivable to the normal mind, and, further, the manner of the execution of the act which we are now considering, by the agencies appointed for its enforcement, has been in many instances such as to transgress the sacred barriers provided by the Constitution for the protection of person and property in this country. The conduct of some of these subordinates has been both arrogant and ruthless, and has reached a degree which has aroused the indignation of many of the best citizens in the land.

An illustration of the character of circumstances which are quite often relied upon by the officers as sufficient to warrant the arrest of an accused person and to authorize criminal proceedings against him, as well as to constitute the basis of assessment for taxes and penalties, the following is quoted from the case of Jake Holmes, Plaintiff in Error, v. United States, Defendant in Error, 275 Fed. 49, which was decided by the Circuit Court of Appeals for the Fourth Circuit July 5, 1921. In that case the government's witnesses were three prohibition agents, and Judge Knapp, in delivering the opinion of the court, says:

"It is conceded that they went upon defendant's premises in his absence, without his knowledge or consent, and without a search warrant or other process. They testified to finding in the yard behind his house certain articles which they claimed were parts of a still, namely, a five gallon kerosene can, which had the smell of still beer and appeared to have been on the fire; a ten or twelve gallon keg containing some corn beer, which would have been "ready" in a few days; a piece of galvanized iron pipe, which they said had been coiled to use for a worm; and a wooden tub, called by them a "flake stand," in which defendant's wife was washing clothes at the time. One of the men went into the house and brought out another can, similar to the one found in the yard. No whisky was discovered on the premises. They broke up the keg and tub, but carried away the cans and piece of pipe, and threw them into the Congaree river. Learning that defendant was at a ginery in the neighborhood, they went there and arrested him without a warrant."

The testimony proposed by the government in the above-cited case furnishes a fair sample of that relied upon in similar prosecutions, which have been and are now pending in this judicial district. The

court is led to believe that such conditions as presented above furnish the basis for assessment of taxes and penalties under the Volstead Act; and not only this, but this case shows how the officers of the government assume the right to enter upon and search the premises and dwelling of a citizen without authority, and seize and destroy property found there without warrant of law.

Is it not time to call a halt, and retrace our steps, until we find ourselves safely within the protecting fold of the American Constitution? It is amazing to think that an accredited officer of the United States would, without warrant or other process, invade the dwelling of a citizen, and seize a tub, in which a helpless woman was doing her domestic washing, and break it to pieces. Such conduct savors more of the act of a barbarian than of an officer holding a commission from this great government, dealing with an American citizen.

The framers of our organic law undertook to guard against the invasion of the rights of the citizen with respect to the liberty of his person and the sacredness of his home and property, and with this end in view provided for trial by jury, for the security of persons, houses, papers, and effects against unreasonable searches and seizures, and that the property of a citizen should not be taken without due process of law. Can the proceedings which have been inaugurated and are being fostered by the federal authorities for the enforcement of the Volstead Act be upheld as due process of law, or in other words can the provisions of the Constitution which undertake to protect property from wrongful seizure, forfeiture, or confiscation be so construed as to permit citizens to be subjected to penalties decreed in secret, without notice, and without the benefit of a hearing. If so, in my opinion the meaning of the provisions of the Constitution above referred to have been misunderstood by the people.

So far the discussion of the subject in hand is intended to point out, if possible, the objectionable methods adopted by the authorities in the enforcement of the prohibition laws, in order that such methods may be corrected. The Eighteenth Amendment is a part of the organic law of the nation, and as such should have the support of the people generally, and laws that are passed for the carrying out of the amendment, to the full extent of its purposes, should not only be sustained by public sentiment, but should have the active aid of all good citizens in their enforcement. St. Paul says: "Let all things be done decently and in order." This injunction could be well applied to the execution of public law.

[2] Coming more particularly to the legal propositions involved in our present cases, it is insisted that these assessments are for taxes, and that under the provisions of section 3224, Revised Statutes (Comp. St. § 5947), the courts are powerless to provide injunctive relief against the assessment or efforts to collect. The section referred to reads as follows:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

This is a statute having in view the orderly and uninterrupted collection of the revenues of the government, which are necessary to meet

its current expenses and public obligations. But in order to make this statute applicable, a tax which is to be collected must be lawful; it must be founded upon some proper subject of taxation, must be assessed in a proper way, and collected in a legal manner. The application of this section of the law is well discussed in the case of Thome v. Lynch, Collector of Internal Revenue, 269 Fed. 995, in the District Court for the District of Minnesota. Judge Booth, in delivering the opinion, says:

"The broad reason underlying section 3224 is that the government shall not be delayed or interfered with in the collection of its revenues. This is clear from the decisions in the cases wherein the statute has been applied. They relate to exactions properly called taxes; that is, exactions for revenue for the uses of the government."

He cites in support of his view the following cases: Barnes v. Railroad, 17 Wall. 307, 310, 21 L. Ed. 544 (tax on dividends); Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901 (internal revenue tax on tobacco); High v. Coyne, 178 U. S. 111, 20 Sup. Ct. 747, 44 L. Ed. 997 (tax on legacies); Dodge v. Osborn, 240 U. S. 118, 36 Sup. Ct. 275, 60 L. Ed. 557 (tax on incomes).

This doctrine is also sustained by the decision in Ketchum v. United States, 270 Fed. 416, which case is consolidated with Weldon v. Same and Henderson v. Same. The decision is of the Circuit Court of Appeals of the Eighth Circuit; the defendants being indicted severally for having a still and distilling apparatus for the production of spirituous liquors in their possessions, without being registered as required by law, for carrying on the business of a distiller without giving the bond required, for carrying on the said business with intent to defraud the United States of the tax on the spirits distilled, etc. I quote from the opinion in that case as follows:

"They could not have carried on the business of a distiller of spirituous liquors, even if they had given a bond, and there was no way by which they could give such bond. The laws in force absolutely prohibited such business, bond or no bond. They could not have carried on the business of a distiller in spirituous liquors with intent to defraud the United States of the tax on the spirits distilled by them, for the reason that at the time the offense charged was committed it would have been impossible for the defendants to pay any tax, or to receive any protection, even if it had been paid. There was no tax to be paid. To absolutely prohibit the manufacture and sale of spirituous liquors, and then to send persons engaged in such business to the penitentiary because they had not paid a tax on the spirits distilled, involves such a contradiction of purpose that there would seem to be no escape from the conclusion that the law requiring the payment of a tax is inconsistent beyond all reasonable doubt with the Act. * * * The claim is made that, notwithstanding the manufacture and sale of spirituous liquors is absolutely prohibited, still the government intends to collect revenue taxes on such business. Of course, such a procedure would be legally and morally impossible. The language of the section absolutely prohibits the payment of any tax in advance, which negatives the idea that the business may be taxed in the sense of the sections of the law upon which the indictment in this case is based."

Counsel for the government takes the position that these assessments are authorized by title 2, § 35, of the Volstead Act, which reads as follows:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

It will be observed that this section undertakes to preserve the right to assess taxes against persons responsible for the illegal manufacture and sale of intoxicating liquors, in double the amount provided by existing law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. There is no method prescribed in the act for the assessment or collection of such taxes or the collection of the penalties, and therefore the authorities have resorted to certain provisions of the former internal revenue laws, and have undertaken to include in assessments, not only the amount which is estimated as double taxes upon spirits actually distilled, but also the full amount of the penalty, the amount of which is definitely stated in the act.

On examination of the internal revenue laws, which were a part of a system for the assessment and collection of taxes on distilled spirits, when the manufacture and sale of such spirits were authorized by the government, it will be seen that there was no authority to collect by distraint specific penalties; but the law did provide that, in a case of the failure of a taxpayer to pay the amount of the taxes assessed against him, an additional percentage would be added. This additional percentage was of course governed by the amount of taxes assessed, and the tax together with the addition, could be collected either by distraint or in a civil action.

Under the present law the penalty is made entirely separate and distinct from the amount of the taxes; it is not prescribed as an additional percentage for the nonpayment of the tax, yet it is included in the assessment before the demand is made upon the taxpayer for payment. The provisions of the internal revenue laws with regard to specific penalties imposed for their violation provided for the collection of such penalties by civil actions, in the name of the United States, and there is no authority for their collection in any other manner. It must therefore necessarily follow that the penalties prescribed in the present act cannot be included under the head of taxes, and their collection enforced by warrant of distraint, issued under an alleged assessment for taxes. The situation then presents itself of an alleged tax assessment upon an outlawed subject, augmented by the addition of a specific penalty prescribed for a violation of law.

Besides, as above stated, under the old system, the penalty was not added to the tax until after the payment of the same was demanded and

refused, or unnecessarily delayed. In the present cases the penalties are added and included in the assessment before the alleged taxpayer has any notice whatever that there is such a claim existing against him. The penalty under the internal revenue system was added because of the nonpayment of the tax; the penalties under the Volstead Act are prescribed as punishment for the illegal manufacture and sale of intoxicating liquors for beverage purposes.

The right to assess taxes for the manufacture and sale of intoxicating liquors for beverage purposes, as provided in the Volstead Act, and to include in such assessments the specific penalties set forth in the said act, is discussed in many cases, several of which are hereinbefore referred to, and to these may be added the case of Accardo v. Fontenot, Collector, with which the cases of Struve v. Same, and Carlisi v. Same were for convenience consolidated. This opinion is reported in 269 Fed. 447. It was rendered by Judge Foster of the Eastern District of Louisiana, and is a most learned and forceful one, and in the line of reasoning and conclusions reached the court here fully concurs.

It may be well, before concluding the views of the court on the subject under consideration, to refer to the fact that evidence of illegal manufacture or sale of illicit spirits must be furnished to the Commissioner before he is authorized to proceed to make an assessment. The term "evidence" in the act must be construed to carry with it its legal and technical force. It is elementary that—

"Evidence is intended to describe conditions from which inferences may be logically drawn as to the existence of facts under investigation."

"Evidence is intended to furnish a lead to induce persuasion of the existence or nonexistence of facts in issue. It is the physical means by which the belief of the existence of a given fact is created."

The unsupported reports of officers, such as are described before, indefinite and uncertain as they necessarily must be, and as the notices and liens hereinbefore set out indicate, cannot be evidence such as is contemplated by law, sufficient to establish facts to be used as a basis for a proceeding against either the person or the property of a citizen.

[3, 4] The conclusions of the court are therefore that under the provisions of section 35 of the Volstead Act taxes cannot be assessed or collected; that the double tax provided for in the act, and the penalties prescribed, are nothing more nor less than punishment for the commission of criminal offenses; that these penalties must be collected by civil actions, or pronounced as judgments in criminal cases; that the provisions of section 3224 do not apply, and that these suits are not forbidden thereby; that the court has jurisdiction to entertain the suits and issue the orders of restraint or decrees for injunction sought thereby.

Decrees in accordance with the views expressed will be drawn and filed in each of the several pending cases.