In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 05-1424 & 05-1435

DAVID and LYNETTE KINDRED,

*Petitioners-Appellants,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeals from an Order of the
United States Tax Court.
Nos. 5658-04L & 5860-04L.

ARGUED OCTOBER 25, 2005—DECIDED JULY 20, 2006

Before COFFEY, MANION, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* After their income tax return was reviewed, taxpayers David and Lynette Kindred (collectively the "taxpayers") were determined by the Internal Revenue Service ("IRS" or "the Service") to be deficient in their payments for the tax year 1999. The taxpayers were informed of this when they were sent a statutory notice of deficiency, which provided them the opportunity to challenge the IRS' determination in the United States Tax Court ("Tax Court"). They failed to do so, and the tax was assessed as due in owing on December 16, 2002. Shortly thereafter, the Kindreds were sent a demand for payment via certified mail and informed that, if they failed to satisfy

the tax obligation, a lien in favor of the United States government would attach to all of their real and personal property. *See* IRC § 6321.[1] The assessment went unpaid, and in an effort to prevent a lien from attaching, the Kindreds promptly notified the IRS that they wished to exercise their right to request a hearing pursuant to IRC § 6330, challenging *inter alia* their underlying tax liability. The IRS sustained the lien holding that the Kindreds' claims were barred by statute, *see* § 6330(c)(2)(B), and the Kindreds filed a petition with the Tax Court. After the close of the pleadings, the IRS moved for summary judgment pursuant to Rule 121(b) of the United States Tax Court Rules of Practice and Procedure and the Tax Court granted the motion. We affirm.

## I.  BACKGROUND

On July 15, 1999, David and Lynette Kindred filed a joint income tax return, Form 1040, for the tax year 1998. Suspecting that the Kindreds had under-reported their taxable income by approximately $628,000, the IRS flagged the return for examination, more commonly referred to as an audit. *See generally* IRC § 7602; Treas. Reg. §§ 301.7602-1 *et seq*. According to the record, the Kindreds failed to communicate with the IRS concerning their return and refused to take part in the examination process.[2] The

---

[1] Citations using the abbreviation "IRC" refer to the Internal Revenue Code, which can be found at 26 U.S.C. § 1 *et seq*. In addition, citations found in this opinion using the abbreviation "Treas. Reg." refer to regulations promulgated by the Department of the Treasury pursuant to authority conferred in the IRC, which may be found at Treas. Reg. 1.1-1 *et seq*.

[2] Although the IRS is entitled to summon taxpayers and to "examine any books, papers, records, or other data which may be relevant or material" in order to perform an audit, it ap-
(continued...)

IRS thereafter determined, without the Kindreds participation, that the couple had attempted to avoid paying taxes on their income by placing their assets into various trusts; something the Service has characterized in the past as an "abusive tax trust scheme." *See, e.g.*, *Muhich v. Commissioner*, 238 F.3d 860, 863 (7th Cir. 2001).

Accordingly, on May 9, 2002[3] the IRS sent the Kindreds a statutory "notice of deficiency" informing them that they owed $991,096.43 in tax, penalties and interest. *See* IRC §§ 6211(a), 6212(a), 7522(a), 6601(a), 6662(a); Treas. Reg. §§ 301.6211-1 *et seq*. Included in the notice of deficiency was information advising them of their statutory right to challenge the proposed assessment of tax deficiency by filing a petition with the Tax Court within 90 days. *See* IRC § 6503(a); Treas. Reg. § 301.6503(a)-1.[4]

---

[2] (...continued)
pears that the IRS did not choose to do so in this case. IRC § 7602(a)(1)-(3).

[3] It is undisputed that the statutory notice of deficiency was sent via certified mail on May 9, 1999 and that the Kindreds received said notice.

[4] Section 6501 of the Internal Revenue Code provides *inter alia* that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) . . . ." The mailing of a statutory notice of deficiency tolls the running of the three-year limitations statute "for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or proceeding in court . . . and for 60 days thereafter." IRC § 6503(a)(1). Pursuant to IRC § 6213, once the Kindreds were sent a statutory notice of deficiency, they had 90 days in which to file a petition with the Tax Court. This, in addition to the 60-day waiting period proscribed by § 6503(a)(1), means that the IRS was precluded from actually assessing the tax liability until approximately December 12, 2002.

The Kindreds failed to contest the IRS' determination, and on December 16, 2002, the tax was statutorily assessed as due in owing. *See* IRC §§ 6201 *et seq.*; Treas. Reg. § 301.6203-1. The same day, the Kindreds were sent a notice of payment, stating that, in order to avoid further collection efforts by the Service, they should immediately remit $991,096.43, the amount in arrears. *See* IRC § 6303(a). Similar notices were sent on January 19, 2003, June 8, 2003 and July 6, 2003, advising the Kindreds that if they failed to pay the outstanding tax balance immediately, the IRS would seek a federal tax lien against their assets.

The Kindreds once again refused to either remit payment or to acknowledge the IRS' collection efforts in any manner. At that point, the IRS assigned a revenue officer[5] to the Kindreds' case in order to ensure payment of the tax and oversee any future collection activities. *See* Treas. Reg. 301.7430-1(g), Example 8. On September 9, 2003, the designated revenue officer paid a visit to the Kindreds' home in order to discuss their tax liability and to inquire as to how they would like to proceed. The revenue officer found

---

[5] Revenue officers represent the collection arm of the United States Department of the Treasury. *See, e.g.*, *Tennessee v. Davis*, 100 U.S. 257, 261 (1879); *Barnes v. Philadelphia & R.R. Co.*, 84 U.S. 294, 304 (1872). According to the Internal Revenue Manual § 5.1.1.2, revenue officers working for an IRS field officer undertake the following assignments: (1) managing "balance due accounts"; (2) undertaking "delinquent return investigations"; (3) performing "courtesy investigations"; (4) investigating "Federal Tax Deposit alerts"; (5) taking part in "compliance initiative projects"; and (6) evaluating "Offers in Compromise." All revenue officers are to discharge their duties in "[c]ompliance with Service policy and guidelines" and "results achieved are to be commensurate with the resources expended." Internal Revenue Manual § 5.1.1.3.2.

the Kindreds to be unavailable at their residence and they did not attempt to get in contact with him after the visit.[6]

With the tax liability unliquidated and no other options available, the IRS sent the Kindreds a notice entitled: "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC § 6320." *See* IRC §§ 6320, 6321. This notice informed the Kindreds of the amount owed as well as their right to challenge the lien, within 30 days, by requesting an administrative proceeding known as a "Collection Due Process" ("CDP") hearing. *See* IRC §§ 6320, 6330.

After receiving the required statutory notice of the filing of a levy, the Kindreds timely exercised their statutory right to request a CDP hearing pursuant to IRC § 6330. When they completed the required CDP hearing request form, IRS Form 12153, the Kindreds were asked to explain why they did not agree with the IRS' filing of a federal tax lien. In response, they stated: "We disagree with the determination of the taxes and additions owed and the calculation of the amounts, if any." The IRS responded by assigning an appeals officer to the case and scheduling a hearing for January 15, 2004.[7]

---

[6] Although the record is unclear, it appears that the revenue officer left some type of notification at the Kindreds' residence advising them that he wanted to speak with them regarding their unpaid taxes.

[7] Collection Due Process hearings are informal affairs. Indeed, the regulations provide that no transcript need be created and that the hearing itself may be conducted via telephone or the mail. *See* Treas. Reg. § 301.6330-1(d)(2)A-D6. As Treas. Reg. § 301.6330-1(d)(2)A-D6 states: "The formal hearing procedures required under the Administrative Procedure Act, 5 U.S.C. 551 *et seq.*, do not apply to CDP hearings. CDP hearings are much like Collection Appeal Program (CAP) hearings in that they

(continued...)

In the documents that the Kindreds submitted to the appeals officer prior to the hearing, they maintained their objection to the accuracy of the taxes, penalties and interest which had been assessed by the IRS. In addition, they argued that instead of being subject to a levy, they should be entitled to pursue collection alternatives pursuant to IRC § 6330(c)(2), such as "the posting of bond, the substitution of other assets, or an offer in compromise." In particular, the Kindreds sought to submit an offer in compromise which, if accepted, could have reduced the amount determined to be owed to the IRS. *See generally Young v. United States*, 535 U.S. 43, 53 (2002). In response, the appeals officer requested additional financial information and documentation from the Kindreds in order to ascertain whether it would be in the IRS' interests to pursue collection alternatives. *See* Treas. Reg. 301.6330-1(e)(1); IRC § 7122. However, the Kindreds failed to submit a formal written offer in compromise or the financial information required for an appeals officer to entertain collection alternatives.[8] Indeed, the Kindreds refused to submit any

----

[7] (...continued)
are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or the taxpayer's representative is not required. The taxpayer or the taxpayer's representative does not have the right to subpoena and examine witnesses at a CDP hearing."

[8] Furthermore, the Kindreds also failed to appear at their scheduled CDP hearing on January 15, 2004. When they did not appear, the appeals officer sent a follow up letter, giving them yet
(continued...)

financial information at all.

As such, the appeals officer refused to consider collection alternatives and was left with only the question of whether the Kindreds could challenge the Service's mathematical calculation and/or the accuracy of the taxes, penalties and interest assessed. The appeals officer concluded that the Kindreds were precluded from doing so because such an argument could be properly classified as a challenge to the underlying liability, which is barred in a CDP hearing by IRC § 6330(c)(2)(B). Accordingly, the levies were sustained.

Unhappy with this determination, David and Lynette Kindred individually filed petitions in the United States Tax Court,[9] arguing that the appeals officer had abused his discretion by refusing to entertain their arguments challenging the mathematical accuracy of the IRS' assessments and by failing to entertain any collection alternatives, such as an offer in compromise or "innocent spouse" relief.[10] *See*

---

[8]  (...continued)
another opportunity to submit financial information which would allow him to consider collection alternatives. The appeals officer requested that they do so by January 29, 2004. The Kindreds failed to respond and, on February 13, 2004, the determination was rendered and filed.

[9]  David and Lynette Kindred filed separate petitions in the Tax Court although both petitions raised essentially the same issues. As a result, the Tax Court issued two separate decisions in the cases. However, since the issues raised and the Tax Court's determinations were essentially identical, we discuss the two cases as one unless otherwise noted.

[10]  In general, taxpayers filing joint returns are joint and severally liable for any deficiencies, penalties and interest assessed against them regarding the return. *See Grossman v. Commissioner*, 182 F.3d 275, 278 (4th Cir. 1999); *Shea v. Commissioner*, 780 F.2d
(continued...)

IRC § 6015(b)(1). Also, they averred that, in addition to being inaccurate, the assessments made by the Service were untimely pursuant to the three-year limitations period set forth in IRC § 6501.[11] At the close of pleadings, the IRS moved for summary judgment pursuant to Rule 121(a) of the Tax Court Rules of Practice and Procedure. The Tax Court granted the IRS' motion, finding that the IRS appeals officer had not abused his discretion in sustaining the respective levies, that the petitioners had failed to present a question of material fact and that entry of judgment in favor of the IRS was proper as a matter of law. *See Kindred v. Commissioner*, No. 5658-04L (Nov. 5, 2004); *Kindred v. Commissioner*, No. 5860-04L (Nov. 5, 2004). The court concluded that: (a) the petitioners were barred from challenging their underlying tax liability during the CDP hearing pursuant to IRC § 6330(c)(2)(B); (b) although no offer in compromise was ever proposed or formally submitted by the Kindreds, they were precluded from proffering one "under [the] guise of an offer in compromise based on doubt as to liability"; (c) failure to raise an "innocent spouse" defense during the administrative process precluded them from doing so for the first time in a petition to the Tax Court;[12] and (d) the petitioners' arguments that the IRS' assessment of tax was outside the three-year limita-

---

[10] (...continued)
561, 564 (6th Cir. 1986). As discussed *infra*, IRC § 6015 constitutes an exception to this rule and provides that where one spouse fails to report income, an "innocent" spouse may seek relief from joint and several liability as long as certain conditions set forth in § 6015(b)(1) are met.

[11] The Kindreds raised this argument for the first time in the Tax Court, explaining that they had not been provided Form 4340, which lists the date of assessment of the tax, until after their petition in Tax Court had been filed.

[12] Only Mrs. Kindred raised the issue of "innocent spouse" relief in her petition in the Tax Court.

tions period of § 6501 were entirely without merit. The Kindreds appealed pursuant to the jurisdiction conferred on this court under IRC § 7482(a).[13]

## II. ISSUES

On appeal, the Kindreds challenge the Tax Court's grant of summary judgment in favor of the IRS based on three perceived errors. Initially, they contend that, contrary to the Tax Court's determination, the IRS appeals officer abused his discretion when he failed to allow them to introduce proposed "collection alternatives" such as an offer in compromise during the CDP proceedings. IRC § 6330(c)(2)(A)(iii). They also maintain that they should have been allowed to introduce evidence during the CDP proceedings which, they argue, would have entitled them to an "innocent spouse" defense. *See Grossman*, 182 F.3d at 278; IRC §§ 6330(c)(2)(A)(i), 6015(a). Finally, the Kindreds take exception with the Tax Court's determination that the IRS' assessment of tax liability was timely within the meaning of IRC § 6501.

## III. ANALYSIS

We review the Tax Court's grant of summary judgment in favor of the IRS, "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." IRC § 7482(a)(1). The material facts are undisputed and petitioners present only questions of law.[14]

---

[13] David and Lynette Kindred lodged separate appeals from the Tax Court. This court, on its own motion, consolidated the appeals in an Order issued on March 15, 2005.

[14] Much like Rule 56(c) of the Federal Rules of Civil Procedure, Rule 121(b) of the United States Tax Court Rules of Practice

(continued...)

Thus, we review the Tax Court's decision to grant summary judgment *de novo. See Krukowski v. Commissioner*, 279 F.3d 547, 550 (7th Cir. 2002); *Connor v. Commissioner*, 218 F.3d 733, 736 (7th Cir. 2000). *See L & C Springs Assocs. v. Commissioner*, 188 F.3d 866, 869 (7th Cir. 1999). In addition, because it is evident from the record before us that the petitioners' underlying tax liability is not at issue,[15] we review the administrative determinations of the IRS appeals officer during the CDP hearing process under an abuse of discretion standard. *See Orum v. Commissioner*, 412 F.3d 819, 820 (7th Cir. 2005); *Sego v. Commissioner*, 114 T.C. 604, 610 (2000) (holding that "where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion")*; Craig v. Comm'r*, 119 T.C. 252, 260 (2002), *cf. Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) (stating that: "In a collection due process case in which the underlying tax liability is properly at issue, the Tax Court (and hence this Court) reviews the underlying liability *de novo* and reviews the other administrative determinations for an abuse of discretion."). Put

---

[14] (...continued)

and Procedure proscribes that summary judgment is only proper where "the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."*Spellman v. Commissioner*, 845 F.2d 148, 152 (7th Cir. 1988) (noting that "the pertinent language in the Tax Court's summary-judgment rule . . . is materially identical to that of Rule 56").

[15] During the administrative process neither of the petitioners ever disputed the fact that they received a statutory notice of deficiency. Thus, they were statutorily precluded from challenging their underlying tax liability at the CDP hearing stage. *See* IRC § 6330(c)(2)(B).

simply, if we conclude that the IRS appeals officer did not abuse his discretion in upholding the levy imposed on the petitioners, then summary judgment was properly granted and we will affirm the Tax Court's decision.[16]

## A. Collection Due Process Hearings

As mentioned above, IRC § 6321 authorizes the Secretary of the Treasury to levy against "any person liable to pay any tax [who] neglects or refuses to pay the same after demand." The lien, when in place, attaches to "all property and rights to property, whether real or personal, belonging to such person." § 6321. In order for the IRS to collect overdue tax via lien, however, a notice and demand for payment must be served on the taxpayer[17] within 60 days of the assessment of the tax. IRC § 6303. If payment is not remitted by the taxpayer, a lien may be sought as soon as the tenth day following transmittal of the notice and demand. Treas. Reg. § 301.6331-1.

Prior to 1998, the abovementioned service of a notice and demand for payment, along with a failure or refusal by the taxpayer to pay the assessed amounts, was all that was procedurally required prior to an IRS lien attaching to a person's property. *See, e.g.*, *Commissioner v. Shapiro*, 424 U.S. 614, 617-18, 629-32 (1976). Taxpayers were entitled to post-deprivation proceedings to challenge a levy, *see id.,* but

---

[16] As the Sixth and First Circuits have acknowledged, while § 6330 was intended to guard against taxpayer harassment at the hands of the IRS, it does not strip the Service of the right to undertake legitimate tax collection activities. *See Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 625 (6th Cir. 2005); *Olsen v. United States*, 414 F.3d 144, 151 (1st Cir. 2005). Accordingly, the standard of review is highly deferential as Congress intended.

[17] Or taxpayers if married and filing jointly.

there was no procedure in place for a taxpayer to challenge the IRS' decision to levy against their property prior to the lien attaching, as long as the IRS could demonstrate that either: (a) the underlying liability was not properly at issue; or (b) where the IRS would have been "jeopardized by delay" in collecting the tax due. *See Shapiro*, 424 U.S. at 617-18; *Living Care*, 411 F.3d at 624; *see also Phillips v. Commissioner*, 283 U.S. 589, 595-97 (1931) (holding that where "adequate opportunity [was] afforded for a later determination of [ ] legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government" were entirely consistent with the Due Process Clause of the Fifth Amendment).

On July 22, 1998, Congress enacted the IRS Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3401, 112 Stat. 685,[18] which was specifically intended to provide taxpayers with additional pre-deprivation opportunities to oppose IRS collection actions. *See* Pub.L. No. 105-206, § 1001, 112 Stat. 685, 689 (stating that *inter alia* the bill is intended to "ensure an independent appeals function within the Internal Revenue Service"). Section 6330 of the IRC was enacted as part of that bill and grants taxpayers the right to request a pre-deprivation hearing[19] in order to allow them to present arguments as to why the filing of a lien would not constitute an appropriate collection device, before that lien actually attaches. In particular, IRC § 6330(c)(2)(A) authorizes the Secretary of the Treasury to consider "any relevant issue relating to the unpaid tax or the proposed levy" during a CDP hearing.

---

[18] The bill was also popularly known by the pseudonym "Taxpayer Bill of Rights." *See Preslar v. Commissioner*, 167 F.3d 1323, 1327 n.2 (10th Cir. 1999).

[19] While taxpayers have a right to a "hearing," such proceedings may be conducted either in a formal setting with all the parties present or via written or oral communications.

This includes "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer in compromise." § 6330(c)(2)(A)(iii). The statute does, however, limit challenges to the "existence or amount of underlying tax liability" to situations in which a taxpayer has "not receive[d] any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." § 6330(c)(2)(B).

### 1. The Kindreds' Right to Submit an Offer in Compromise

The Kindreds initially argue that they should have been permitted to submit an offer in compromise premised on "doubt as to liability" during the CDP hearing process under IRC § 6330(c)(2)(A)(iii). The failure to entertain such an offer, they assert, constitutes an abuse of discretion on the part of the appeals officer. In addition, they take issue with the Tax Court's determination that the Kindreds, by attempting to introduce collection alternatives, were simply trying to challenge their underlying tax liability under the "guise of an offer in compromise based on doubt as to liability."

As stated above, IRC § 6330(c)(2)(A) gives taxpayers faced with an IRS levy the right to proffer collection alternatives at the CDP hearing stage, including offers-in-compromise.[20] This right, however, carries with it certain obligations on the part of the taxpayer. For instance, Treas. Reg.

---

[20] Section 301.6330-1(e)(3)A-E6 of the Treasury Regulations gives some additional examples of collection alternatives, such as "a proposal to withhold the proposed or future collection action in circumstances that will facilitate the collection of the tax liability, an installment agreement . . . the posting of a bond, or the substitution of other assets."

§ 301.6330-1(e)(1) states that "[t]axpayers will be expected to provide all relevant information requested by [the appeals officer], including financial statements, for its consideration of the facts and issues involved in the hearing." In addition, the regulations implore taxpayer participation in the CDP hearing process. Indeed, Treas. Reg. § 301.6330-1(e)(3)A-E8(ii) specifically provides that, "taxpayers are encouraged to discuss their concerns with the IRS office collecting the tax." Suggested collection plans submitted during a CDP hearing are weighed according to "whether [the] collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary." Treas. Reg. § 301.6330-1(e)(3)A-E8(i). The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general. *See* IRC § 7122; Treas. Reg. § 301.7122-1(c)(1).

The Kindreds' argument that they should have been allowed to submit an offer in compromise is frivolous. To begin with, the Tax Court's review, as well as our review, is strictly confined to only those issues which were originally raised during the CDP hearing. *See* Treas. Reg. § 301.6330-1(f)(2), Q-F5 & A-F5; *Living Care v. United States*, 411 F.3d 621, 625 (6th Cir. 2005). Although the record of the CDP hearing proceedings in this case is sparse,[21] it is clear that the Kindreds failed to ever actu

---

[21] As the Sixth Circuit noted in *Living Care*, review of CDP hearings is often based on a particularly scant record which consists mainly of "parties' appellate briefs and the Notice of Determination letter . . . . No transcript or official record of the hearing is required and, accordingly, one rarely exists." 411 F.3d at 625.

While the record consists of some additional information—such as exhibits provided by the IRS concerning when certain events

(continued...)

ally make an offer in compromise, much less submit one to the IRS appeals officer for consideration in accordance with the requirements set forth in IRC §§ 6330(c)(3) and 7122. Without an actual offer in compromise to consider, it would be most difficult for either the Tax Court or this court to conclude that the appeals officer might have abused his discretion; for the appeals officer could not mistakenly reject something which has not been presented to him. *See Kendrics v. Commissioner*, 124 T.C. 69, 79 (2005) (holding that: "Since there was no offer in compromise before [the appeals officer], there was no abuse in discretion in [the officer] failing to consider an offer in compromise."); *Magna v. Commissioner*, 118 T.C. 488, 493 (2002) (holding that it would be "anomalous . . . to conclude that [an] Appeals Office abused its discretion under section 6330(c)(3) in failing to grant relief, or in failing to consider arguments, issues, or other matters not raised by the taxpayers or not otherwise brought to the attention of [an] Appeals Office" during a CDP hearing).

The Kindreds attempt to dodge the proverbial bullet, however, by stating that the IRS appeals officer "would not permit" them to submit an offer in compromise. However, we have been unable to discern anything in the record which would lend support to this statement or lead us to believe that the appeals officer did any such thing. Indeed, it is eminently clear that the Kindreds failed to participate

---

[21] (...continued)

took place—the Kindreds' case is no exception. Indeed, because the Kindreds failed to ever show up to their scheduled CDP hearing, obviously no transcript exists. In addition, the communications that transpired between the appeals officer and the Kindreds prior to a determination was made are not included in the record on appeal. Therefore, aside from the appeals officer's actual written decision, which is in the record, we are left with little outside the pleadings to parse.

in the CDP hearing process in any meaningful way. For example, it is undisputed that, when asked to do so, the Kindreds failed to provide financial information of any kind to the appeals officer as required by Treas. Reg. § 301.6330-1(e)(1). This alone would have provided the appeals officer with a reason to refuse to consider any proffered offer in compromise. *See Olsen*, 414 F.3d at 151 (stating that "failure to respond to inquiries for information in a timely manner constitutes grounds for giving no further consideration to an offer in compromise.").

What's more, the Kindreds even failed to attend their scheduled hearing in Las Vegas, Nevada, on January 15, 2004. The appeals officer, if he had seen fit, could have issued a determination that day sustaining the levy and denying the Kindreds any additional time to submit an offer in compromise. However, he did not do so and instead offered the Kindreds another fourteen days—until January 29, 2004—to submit the requested financial information along with an offer in compromise. True to form, the Kindreds failed to do so and, thus, on February 13, 2004 a determination sustaining the levy was issued.[22] The only explanation given for this complacency was offered by the Kindreds' representative during the administrative proceedings, who stated: "I explained to [the appeals officer] that I would require adequate time, based upon the near lack of records and need to acquire information from the Service itself, to prepare any [offer in compromise]. He [(the appeals officer)] extended the hearing until January 29, 2004 but would not give any additional time for preparing the [offer in compromise]. I was unable to submit an [offer in compromise]." This statement, at the very least, serves to

---

[22] It should be noted that this represents yet another two-week period prior to the appeals determination in which the Kindreds could have, but did not, submit financial information and/or an offer in compromise.

undermine the veracity of the Kindreds' claim that they were not "permitted to submit" an offer in compromise. To the contrary, their own representative's statement illustrates the fact that they were given numerous opportunities to submit the required financial information and/or an offer in compromise, but failed to do so. The fact that the Kindreds were unable, or unwilling, to timely supply the financial information that the regulations require in order for the IRS to consider an offer in compromise, *see* Treas. Reg. § 301.6330-1(e)(1), falls far short of establishing that the appeals officer's determination was hasty under the circumstances[23] and certainly does not mean that he abused his discretion by "refusing" to allow the Kindreds to submit such an offer.[24] *See, e.g.*, *Olsen*, 414 F.3d at 151; *Murphy v. Commissioner*, 125 T.C. 301, 323 (2005) (holding that it was reasonable for appeals officer to sustain levy where the taxpayer had a two month period of time to submit a reasonable offer in compromise, but failed to do so); *Chandler v. Commissioner*, T.C. Memo 2005-99 (2005) (when petitioner failed to supply requested financial information after being given six weeks to do so it was not an abuse of discretion for the appeals officer to issue a determination sustaining a levy); *Roman v. Commissioner*, T.C. Memo 2004-20 (2005) (reasonable for appeals officer to sustain levy where, after being give six weeks to do so, the taxpayer

---

[23] They had approximately three months from the date they requested a hearing, October 30, 2003, until the determination was rendered on February 13, 2004, to submit the requisite financial information along with an offer in compromise.

[24] As the appeals officer stated in his written decision sustaining the lien against the Kindreds, they "were offered the opportunity to discuss alternative methods of collection, whether administrative procedures [were] properly followed by the IRS, and the degree of intrusiveness caused by the filing of the Notice of Federal Tax Lien," but failed to do so.

failed to supply the requisite financial information in conjunction with an offer in compromise).

Also, while our review of the Tax Court's decision is *de novo*, we pause for the sake of completeness and note that the Tax Court had good reason to believe that the Kindreds wished to submit an offer in compromise only as a "guise" to lodge an impermissible collateral attack on their underlying liability. As recently as their brief before this court the Kindreds maintained their former intention to introduce an offer which would be predicated on "doubt as to liability." It is true that the Kindreds would be precluded from challenging their underlying liability during a CDP proceeding, *see infra* p. 20-22. However, as discussed above we are convinced that there are more fundamental reasons for concluding that the appeals officer did not abuse his discretion in not considering an offer in compromise, *e.g.*, because no offer was in front of him and because the Kindreds failed to supply the necessary financial information.

2.  Innocent Spouse Defense

The Kindreds next argument on appeal closely tacks their claims regarding the consideration of an offer in compromise. It is their assertion that the appeals officer "ignored Appellant Lynette Kindred's spousal defense." *See* IRC § 6015. Nevertheless, the Kindreds maintain that "Lynette Kindred's spousal defense [would have been] part and parcel of the [offer in compromise]," which, as discussed above, was never properly before the appeals officer.

Innocent spouse relief or "relief from joint and several liability," such as that claimed by the Kindreds, falls under the provisions of IRC § 6015(b)(1). That section requires that: "(A) a joint return has been made for a taxable year; (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return; (C) the other individual filing the joint re-

turn establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement; (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election." However, in order to be eligible for relief under § 6015, a taxpayer is first required to submit IRS Form 8857, "Request for Innocent Spouse Relief." *See* Treas. Reg. § 6015-5(a). Form 8857 must be filed with the IRS within two years of the date of the first collection activity and requires that the taxpayer make certain statements regarding their tax liability and marital status under penalties of perjury. *Id*. at 6015-5(b).

Not surprisingly, the Kindreds did not submit a Form 8857. Nor did they even inform the appeals officer that they wished to seek innocent spouse relief under § 6015(b). Indeed, the first mention of a possible innocent spouse defense is on Lynette Kindred's petition in the Tax Court. We agree with the Tax Court's conclusion that this was far too late to introduce such an argument. *See Kindred v. Commissioner*, No. 5860-04L, at *2 (Nov. 5, 2004). The regulations clearly state that, "[a] taxpayer may raise any appropriate spousal defenses at a CDP hearing," however, "the taxpayer must do so in writing according to the rules prescribed by the Commissioner or the Secretary." Treas. Reg. § 301.6330-1(e)(2). The Kindreds' failure to submit Form 8857 or any notice whatsoever of their intention to raise a spousal defense during the CDP hearing process is thus fatal to their claim that the appeals officer abused his discretion by not considering such a defense. *See supra* p. 13; *Living Care*, 411 F.3d at 625; *Magna v. Commis-*

*sioner*, 118 T.C. at 493; *see also* Treas. Reg. § 6330-1(f)(2) A-F5 (stating that: "In seeking Tax Court . . . review of Appeals' Notice of Determination, the taxpayer can only ask the court to consider an issue that was raised in the taxpayer's CDP hearing."). In addition, if it is the Kindreds' contention that their spousal defense was to be included in their non-existent offer in compromise, that argument would also fail for the reasons outlined above. *See supra.* p. 11-15.

B.  Petitioners' Challenge to the Timeliness of the IRS' Assessment of an Income Tax Deficiency

In their final argument on appeal, the Kindreds claim that "the Tax Court erred in determining that the assessment by the [IRS] on December 20, 2002 for tax year 1998 was timely because it violates the [IRC § 6501]." We disagree.

Contrary to the Kindreds' statement, the Tax Court did not determine that the assessment of the tax by the IRS was timely under IRC § 6501. Instead, what the Tax Court found was that "[b]ecause petitioner received a statutory notice of deficiency for 1998, she is precluded from challenging her underlying tax liability." There was good reason for this determination.

As noted above, IRC § 6330(c)(2)(B) limits challenges as to the "existence or amount of underlying tax liability" to situations in which a taxpayer has "not receive[d] any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." It is well settled law that a challenge to the IRS' ability to assess a tax under the statute of limitations codified at IRC § 6501 constitutes a "challenge to the underlying tax liability." *See Pomerantz v. Commissioner*, T.C. Memo 2005-295 (2005); *Jensen v. Commissioner*, 87 T.C.M. 1340, 1343 (2004*); Wolk v. Commissioner*, T.C. Summ.Op. 2003-173 (2003); *Hoffman v. Commissioner*, 119 T.C. 140, 145 (2002).

The Kindreds do not dispute the fact that they received a statutory notice of deficiency. Thus, their claim that the IRS was barred from assessing the tax based on the expiration of the three-year statute of limitations in IRC § 6501, which constitutes a challenge to the underlying tax liability, is barred by IRC § 6330(c)(2)(B). The proper time to challenge the amount, existence or timeliness of the IRS' proposed assessment would have been to file a petition with the Tax Court within 90 days of receipt of the statutory notice of deficiency. *See* IRC § 6213(a).[25] The Kindreds failed to do this and are thus precluded from doing so at this stage. *See* IRC § 6330(c)(2)(B). In addition, this is yet another claim that the Kindreds failed to present to the appeals officer during CDP hearing proceedings, therefore they were precluded from raising it either in a petition before the Tax Court or in this court. *Living Care*, 411 F.3d at 625; *Magna v. Commissioner*, 118 T.C. at 493; *see also* Treas. Reg. § 6330-1(f)(2) A-F5.

## IV. CONCLUSION

We are convinced that the Tax Court properly concluded

---

[25] In fact, Treas. Reg. 301.6330-1(e)(4) Example 1, specifically states that if the IRS sends a statutory notice of deficiency to a taxpayer, and that taxpayer "receives the notice of deficiency in time to petition the Tax Court for a redetermination of the asserted deficiency . . . . [and] [t]he taxpayer does not timely file a petition with the Tax Court . . . [he/she] is precluded from challenging the existence or amount of the tax liability in a subsequent CDP hearing." That is precisely what happened here. The Kindreds have never disputed that they received the statutory notice of deficiency in time to petition the Tax Court for redetermination of the underlying tax liability. In addition, they never disputed the IRS' assessment in any way, that is, until the CDP hearing; something that is specifically disallowed by the regulations.

that the IRS appeals officer did not abuse his discretion during the Kindreds' CDP hearing. Accordingly, summary judgment was properly granted in favor of the IRS and the decision of the Tax Court is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*