T.C. Memo. 2009-19


UNITED STATES TAX COURT


JEANETTE M. GREGG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 11005-07L, 11006-07L,    Filed January 29, 2009.
              11007-07L.


<u>Robert E. McKenzie</u>, for petitioner.

<u>Karen Lynne Baker</u>, for respondent.


MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  In these consolidated cases petitioner seeks
review of respondent's determination to proceed with actions
taken (the filing of tax liens) and actions proposed to be taken
(intent to levy) to collect petitioner's unpaid income taxes for
1998 to 2004.  The cases were submitted fully stipulated pursuant

to Rule 122.  The issues for decision are whether respondent abused his discretion:  (1) In rejecting petitioner's offer-in-compromise to satisfy her unpaid tax liabilities, and (2) in sustaining the filing of tax liens and proposed levy on petitioner's assets.

All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.

## Background

The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time she filed her petitions, petitioner resided in Illinois.

Petitioner has a history of either filing her income tax returns late or failing to file her returns, and either making tax payments late or failing to make any payments.

| Year | Filing of Return | Payment of Tax |
| --- | --- | --- |
| 1993 | Timely | Late |
| 1994 | Timely | Late |
| 1995 | Not filed | Never paid |
| 1996 | Not filed | Never paid |
| 1997 | Not filed | Never paid |
| 1998 | Return completed by IRS | Never paid |
| 1999 | Return completed by IRS | Never paid |
| 2000 | Return completed by IRS | Never paid |
| 2001 | Return completed by IRS | Never paid |
| 2002 | Late | Never paid |
| 2003 | Late | Never paid |
| 2004 | Late | Never paid |

Petitioner is current on her Federal income tax filing and payment requirements for 2005, 2006, and 2007.

Respondent prepared returns pursuant to section 6020(b) for petitioner for 1998, 1999, 2000, and 2001. On the basis of those returns, respondent issued notices of deficiencies to petitioner. Thereafter, petitioner petitioned this Court challenging respondent's determinations. The parties subsequently resolved their differences, and on March 25, 2005, the Court entered four separate decisions reflecting the parties' agreement. On May 2, 2005, respondent made the following assessments against petitioner, which were based on the Court's decisions:

| Year | Deficiency |
|------|-----------|
| 1998 | $11,470 |
| 1999 | 14,881 |
| 2000 | 19,367 |
| 2001 | 42,214 |

On May 12, 2005, petitioner filed her 2002 and 2004 Federal income tax returns. She did not pay the tax reported thereon. On June 6, 2005, on the basis of amounts reported on these returns, respondent made the following assessments against petitioner:

| | | Additions to Tax | | |
|------|------|------|------|------|
| Year | Tax | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2002 | $31,616 | $5,959.35 | $3,443.18 | $866.04 |
| 2004 | 46,245 | 1,396.35 | 310.30 | -0- |

Petitioner filed her Federal income tax return for 2003 on May 13, 2005, but did not pay the tax reported thereon. On the

basis of the amount reported on this return, respondent made the following assessment against petitioner on June 13, 2005:

|       |          | Additions to Tax |                 |          |
| Year  | Tax      | Sec. 6651(a)(1)  | Sec. 6651(a)(2) | Sec. 6654 |
| ----- | -------- | ---------------- | --------------- | --------- |
| 2003  | $24,480  | $5,508           | $1,713.60       | $631.63   |

On November 10, 2005, respondent sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Right to a Hearing under IRC 6320, for her unpaid Federal taxes for 1998, 1999, 2000, and 2001. In response, on December 9, 2005, petitioner requested a collection due process hearing (section 6330 hearing).

On December 15, 2005, respondent sent petitioner a Letter 3172 for her unpaid Federal taxes for 2002, 2003, and 2004. In response, on January 13, 2006, petitioner requested a section 6330 hearing.

On January 9, 2006, respondent sent petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, for her unpaid Federal taxes for 1998, 1999, 2000, 2001, 2002, 2003, and 2004. In response, on February 2, 2006, petitioner requested a section 6330 hearing.

On July 13, 2006, petitioner submitted a Form 656, Offer in Compromise, and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with attachments, offering to pay $60,000 in satisfaction of unpaid 1998-2004

taxes totaling $205,652 as of February 8, 2006.  The offer was made on the bases of:  (1) Doubt as to collectibility and (2) effective tax administration.  Attached to Form 656 was an explanation of petitioner's circumstances, which stated:

> Jeanette Gregg is a 57-year old woman.  She is retired, but has secured her real estate license, and has begun to sell real estate to supplement her retirement income.  She has one child, a 33-year old daughter who has been diagnosed with kidney failure.
> Since the discovery of her child's illness, the taxpayer has become very involved in her care and treatment.  The taxpayer's daughter did receive a kidney transplant in February, 2005.  The taxpayer has been involved in all follow-up care and treatment in connection with the transplant.
> Additionally, the taxpayer has been diagnosed with Spinal Stenosis.  She is in physical therapy for this condition.  She underwent back surgery on April 4, 2005, which has effected [sic] her mobility.  She also suffers from high blood pressure and diabetes, and is on medication for these conditions.
> In connection with her work in real estate, consideration must be given to the imminent slow-down in real estate sales.  Increased interest rates and a slowing economy are contributing factors, and it remains uncertain as to how long the taxpayer will generate any income in this area, even if healthy.

On Form 433-A, section 9, petitioner reported that her monthly income was $7,324 ($3,000 business income plus $4,324 from pensions) and her monthly living expenses were $7,149.

Petitioner's hearing requests and the review of her offer-in-compromise were assigned to Appeals Settlement Officer Ivan Porrata (the settlement officer).  By letter dated December 4, 2006, the settlement officer proposed to have a telephone conference on December 28, 2006, to discuss the reasons

petitioner disagreed with respondent's proposed collection activities and/or to discuss alternatives to such actions. The settlement officer informed petitioner that in order for petitioner's offer to be considered, she would have to file her Federal income tax returns for 1995, 1996, and 1997. On December 20, 2006, petitioner's counsel sent the settlement officer a letter together with copies of two sections of the Internal Revenue Manual (IRM), consisting of IRM pt. 5.1.11.6.1 and IRM pt. 5.9.13.19, which counsel maintained was "the IRS policy that pursuit of unfiled returns is generally limited to six years."

During the December 28, 2006, conference,[1] petitioner's counsel posited that pursuant to Internal Revenue Service (IRS) policy, petitioner's offer-in-compromise should be considered notwithstanding petitioner's failure to file tax returns for 1995, 1996, and 1997. The settlement officer and petitioner's counsel discussed the following sections from the IRM:

> IRM 5.8.3.4.1--Determining Processability (9-1-2005)
>
> (1) An offer in compromise will be deemed not processable if one or more of the following criteria are present:
>
> > (a.) Taxpayer Not in Compliance--All tax returns for which the taxpayer has a filing requirement must be filed. This rule applies even if a Service employee previously decided not to pursue the filing of the

---

[1]Petitioner requested an abatement of all late payment penalties for reasonable cause, claiming that both she and her daughter had medical problems. Acceding to petitioner's request, respondent abated the late payment penalties.

return under the provisions of Policy Statement P-5-133, because it was believed to have "little or no tax due" * * *.

Note: Generally speaking, IRM 5.1.11.1.3(2), Delinquent Return Program, only requires employees to conduct a compliance check to confirm and document all IMF tax returns were filed for the preceding 6-year period. The only exception would be if fraud were discovered during the course of the investigation. Even then it should be extremely rare to go beyond 6 years.

IRM 5.1.11.4, Cases Requiring Special Handling, discusses enforcement criteria, which states that if the taxpayer refuses to file, neglects to file, or indicates an inability to file, then the employees should determine to what extent enforcement should be used (e.g. summons, 6020(b), referral to Exam, or field, etc.). Filing requirements will normally be enforced for a 6-year period, which is calculated by starting with the tax year that is currently due and going back 6 years.

IRM 5.1.11.6.1--Enforcement Determination (05-07-2002)

(1) The determination to pursue or not pursue a return will depend upon the facts of each case. Review Policy Statement P-5-133 (see IRM 1.2.1.5.19) for general guidelines and factors to consider when determining whether to pursue enforcement of filing requirements and secure a return.

(2) The specific factors that must be considered when making an enforcement determination are:

(a.) Degree of flagrancy;

(b.) History of noncompliance;

(c.) Impact on future voluntary compliance;

(d.) Whether the delinquency involves trust fund monies collected;

(e.) Special circumstances peculiar to a specific taxpayer, class, industry or type of tax;

(f.) Existence of income from illegal sources;

(g.) Minimal or no Tax due (See LEM 5.2.4);

(h.) Cost to the service to secure a return with respect to anticipated tax revenue;

(i.) Bankruptcy; (contact Insolvency).

(3) <u>Enforcement of filing requirements will normally be pursued for a six year period</u>.  Always request all (non-fraudulent) unfiled returns.  The taxpayer may file for all open periods regardless of the age of the delinquency.  [Emphasis added.]

They also discussed Policy Statement 5-133, which is included in

IRM pt. 1.2.14.1.18.

IRM 1.2.14.1.18--Policy Statement 5-133 (08-04-2006)

(1) Delinquent returns--enforcement of filing requirements

(2) Taxpayers failing to file tax returns due will be requested to prepare and file all such returns except in instances where there is an indication that the taxpayer's failure to file the required return or returns was willful or if there is any other indication of fraud. * * *

(3) Where it is determined that required returns have not been filed, the extent to which compliance for prior years will be enforced will be determined by reference to factors ensuring compliance and evenhanded administration of staffing and other Service resources.

(4) Factors to be taken into account include, but are not limited to: prior history of noncompliance, existence of income from illegal sources, effect upon voluntary compliance, anticipated revenue, and collectibility, in relation to the time and effort required to determine tax due.  Consideration will also be given any special circumstances  existing in the case of a particular taxpayer, class of taxpayer, or industry, or which may be peculiar to the class of tax involved. * * *

(5) Normally, the application of the above criteria will result in enforcement of delinquency procedures for not more than six (6) years.  Enforcement beyond such period will not be undertaken without prior managerial approval.

The settlement officer disagreed with the position of petitioner's counsel that IRM pt. 5.8.3.4.1 limited the pursuit of a taxpayer's tax filings to those income tax returns for the 6-year period preceding petitioner's current tax year. The settlement officer maintained that: (1) IRM pt. 5.1.11.6.1(1) provides that the determination to pursue or not pursue the filing of a return depends on the facts of each case, and (2) IRM pt. 5.1.11.6.1(2) provides a list of factors that must be considered, including degree of flagrancy of noncompliance, history of noncompliance, and impact on future voluntary compliance, all of which directly apply to petitioner. The settlement officer believed that because petitioner had taxable income in years both before (i.e., 1993 and 1994) and after (i.e., 1998-2004) the years relating to the unfiled tax returns (i.e., 1995-97), it was likely that a tax balance existed for 1995, 1996, and 1997.

Petitioner's counsel disagreed with the settlement officer's conclusions but stated that petitioner would endeavor to file the three delinquent returns. Counsel noted that petitioner was retired and might have difficulty getting the financial information necessary to file her 1995-97 returns.

By letter dated March 1, 2007, the settlement officer requested additional financial documentation from petitioner. By letter dated March 22, 2007, petitioner's counsel provided the

requested documents.  That letter informed the settlement officer that petitioner had attempted to secure information to prepare the 1995-97 returns, but that the information was not available.

On March 23, 2007, the settlement officer informed petitioner that her offer-in-compromise would be rejected because of her noncompliance with filing requirements.[2]  However, the settlement officer offered petitioner a proposed partial payment installment agreement that was based on the financial information petitioner provided.  Petitioner would be required to make monthly payments of $788 until January 2008, followed by monthly payments of $1,800 from February 2008 to June 2009 and monthly payments of $2,100 thereafter.  By letter dated March 28, 2007, petitioner's counsel informed the settlement officer that petitioner would not accept the proposed partial payment installment agreement.

On April 20, 2007, respondent sent petitioner three separate Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 regarding liens and proposed levies for 1998, 1999, 2000, 2001, 2002, 2003, and 2004.  In each of the notices respondent rejected petitioner's offer-in-compromise because of petitioner's noncompliance with filing requirements.

---

[2]The settlement officer followed IRM procedure by procuring manager approval before requiring petitioner to file her income tax returns for 1995, 1996, and 1997, as required by Policy Statement 5-133 when requiring the filing of income tax returns beyond the 6-year period.

Each notice noted that petitioner had rejected respondent's offer of a proposed partial payment installment agreement.

On May 18, 2007, petitioner filed three petitions requesting the Court to review respondent's collection determinations.

## Discussion

A.  Standard of Review

These cases involve a review of respondent's determination to proceed with collection of petitioner's unpaid tax liabilities for 1998 to 2004.  Administrative hearings under section 6320 (dealing with liens) and section 6330 (dealing with levies) are conducted in accordance with section 6330(c).[3]  After the Commissioner issues his notice of determination following an administrative hearing, a taxpayer has the right to petition this Court for judicial review of the determination.  Secs. 6320(c), 6330(d)(1).  Our review of the determination is subject to the provisions of section 6330.

The judicial review that we are required to conduct in section 6320/6330 cases focuses on the determination made by the Commissioner.  Unless the underlying tax liability of the taxpayer that is the subject of the proceeding is properly at issue, we review the Commissioner's determination for abuse of

_____

[3]The rules governing section 6330 hearings govern hearings under sec. 6320.  Sec. 6320(c).  Sec. 6320(b)(4) provides that to the extent practicable, a hearing under sec. 6320 shall be held in conjunction with a hearing under sec. 6330.

discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000)

Petitioner's deficiencies for 1998, 1999, 2000, and 2001 were decided by this Court.  We therefore review respondent's determinations for these years for abuse of discretion.  Petitioner's deficiencies for 2002, 2003, and 2004 were not subject to deficiency proceedings, either administratively before respondent or before this Court.  However, petitioner does not dispute the validity of the underlying tax liability for any of those years.  Accordingly, we review respondent's determinations for these years for abuse of discretion.

An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking sound basis in fact or law.  Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

B.  The Offer-in-Compromise

Section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability.  "The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general."  Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006).  It is in this light that we review respondent's rejection of petitioner's offer-in-compromise.  We do not decide whether in

our opinion petitioner's offer-in-compromise should have been accepted. See Woodral v. Commissioner, supra at 23; Keller v. Commissioner, T.C. Memo. 2006-166.

Each of respondent's notices of determination, all dated April 20, 2007, states:

> The taxpayer submitted an Offer in Compromise on July 12, 2006 under Doubt as to Collectibility and Effective Tax Administration. The taxpayer is not compliant with filing requirements. The taxpayer has not filed returns for years ended December 31, 1997, December 31, 1996 and December 31, 1995. In a letter dated December 4, 2006; Mr. Porrata requested the filing of these returns as part of the compliance requirement for the Offer in Compromise investigation. On December 19, 2006, Ms. Lach [petitioner's counsel] called Mr. Porrata of Appeals and stated there was an IRS policy which limits the filing of delinquent returns to 6 years. During the telephone conference held on December 28, 2006, the issue was addressed; several IRM sections and Policy statements were discussed. Mr. Porrata maintained that the sections cited by Ms. Lach referred to the service's enforcement procedure in securing delinquent returns. Mr. Porrata informed Ms. Lach that per IRM section 5.8.4.1(1) which addresses the Offer in Compromise program states that all returns for which the taxpayer has a filing requirement must be filed. Ms. Lach conceded that the taxpayer had tax liabilities prior to and subsequent to the delinquent periods and would likely have liabilities for the delinquent periods but, she disagreed that the returns must be filed; hence, the Offer in Compromise was rejected.

Petitioner argues that the settlement officer's demand that she file her delinquent income tax returns for 1995, 1996, and 1997 before he would consider her offer-in-compromise violated IRS policy as stated in the IRM and hence was arbitrary. Petitioner maintains that respondent abused his discretion by ignoring her economic and medical status by focusing on her delinquent income tax returns. However, in the Answering Brief

for Petitioner, dated August 7, 2008, petitioner's counsel concedes that the IRM does not have the force and effect of law but only provides direction and guidance.[4]

We do not believe respondent abused his discretion in rejecting petitioner's offer-in-compromise. Petitioner has a history of not timely filing returns and paying her Federal income taxes. It is well within respondent's discretion to require that petitioner be in full compliance with these requirements before accepting an offer-in-compromise. See Otto's E-Z Clean Enters., Inc. v. Commissioner, T.C. Memo. 2008-54; Corona Pathology Servs., Inc. v. Commissioner; T.C. Memo. 2003-120.

As noted supra, the decision whether to accept petitioner's offer-in-compromise rests squarely within the discretion of respondent. The settlement officer was under no obligation to accept petitioner's offer. We find there was a reasonable basis for the settlement officer's decision.

C. The Installment Agreement

After respondent rejected petitioner's offer-in-compromise, the settlement officer proposed a partial payment installment agreement which required petitioner to make monthly payments of

---

[4]We have previously held that as a general rule, provisions within the Commissioner's IRM are not binding on the Commissioner and confer no rights on taxpayers. See Thoburn v. Commissioner, 95 T.C. 132, 141-142 (1990).

$788 until January 2008, followed by monthly payments of $1,800 from February 2008 to June 2009 and monthly payments of $2,100 thereafter. In general, the proposed partial payment installment agreement was based on the financial information petitioner provided on Form 433-A, which she submitted with her offer-in-compromise. The settlement officer made certain adjustments to petitioner's financial information that were based on the Commissioner's national allowable expense tables (national standards) before adopting the proposed installment agreement.

Petitioner alleges that respondent abused his discretion by failing to consider her age and health concerns and the realities of the market in which she earns her living when determining her monthly excess income over expenses.

Petitioner's argument is not supported by the record. As reflected in his calculations entered onto petitioner's Form 433-A, the settlement officer used petitioner's earnings statement to calculate her monthly income. On Form 433-A, petitioner estimated she would receive $7,324 in total monthly income (annualized to $87,888), including an estimated $3,000 per month in net business income in 2006.

We are mindful that as part of her offer-in-compromise, petitioner provided a physician's report stating that petitioner was being treated for a degenerative back condition beginning in at least 2003. However, petitioner's income statements did not

reflect a decline in her income while she was under treatment. The records petitioner provided showed she earned $73,681 in adjusted gross income in 2003, $183,647 in 2004, and $94,545 for 2005.  Thus, there is no indication that petitioner's income had declined during the period she was treated for her back condition.  Given that petitioner estimated her future monthly net business income to be $3,000 (after 4 years of treatment for her back condition), we reject petitioner's argument that respondent did not take her health into consideration in his calculation.

Petitioner also argues that in determining her income, respondent did not take into account the local real estate market in which petitioner works.  Petitioner did not provide any evidence regarding local real estate projections.  Instead, petitioner makes a general assertion that she will not be able to maintain her income level.  This is mere speculation.  Given the information presented to him, it was not arbitrary or capricious for the settlement officer to discount petitioner's speculative future income projections in making his offer of an installment agreement.

Similarly, respondent used petitioner's own transportation, health care, tax, and legal monthly costs in calculating her living expenses.  We find that it was not arbitrary or capricious

for respondent to use these figures in calculating petitioner's monthly living expenses.[5]

The settlement officer did adjust petitioner's "food, clothing and misc." expenses and her "housing and utilities" expenses and eliminated her condominium assessment expenses in accordance with respondent's national standards.  Petitioner argues that pursuant to section 301.7122-1(c)(2)(i), Proced & Admin. Regs., respondent was required to include her actual expenses when determining her total monthly living expenses and not use the national standards.  Section 7122(c)(2)(B), in effect when petitioner submitted her offer-in-compromise, provides that the Commissioner may depart from the national standards when "such use would result in the taxpayer not having adequate means to provide for basic living expenses."

Petitioner did not provide evidence demonstrating that she would not have adequate means to provide for her basic living expenses if the national standards were used.  And where a taxpayer does not present this evidence, we have held that use of the national standards is not an abuse of discretion by the Commissioner.  See <u>Diffee v. Commissioner</u>, T.C. Memo. 2007-304; <u>McDonough v. Commissioner</u>, T.C. Memo. 2006-234.

---

[5]Respondent increased petitioner's monthly life insurance expenses, a change which benefited petitioner.

Skrizowski v. Commissioner, T.C. Memo. 2004-229, cited by petitioner, is distinguishable. In Skrizowski, the Commissioner ignored his own financial determination regarding the taxpayer when he rejected a collection alternative. In these cases, however, respondent considered all of the information petitioner provided and did not make any contradictory findings.

Although section 6330(c) requires respondent to consider relevant issues properly raised by petitioner, including a claim that a collection alternative, such as an installment agreement, is more appropriate, respondent is not required to offer petitioner a collection alternative acceptable to petitioner before determining that a lien and a levy are more appropriate collection tools. See sec. 6159(a) (generally granting the Commissioner discretion to enter into installment agreements).

D.  Conclusion

Respondent did not abuse his discretion in rejecting petitioner's proposed offer-in-compromise or in proposing his installment agreement. We sustain respondent's lien and levy collection activities.

To reflect the foregoing,

Decisions will be entered

for respondent.